*Rasherd Lewis v. State of Maryland*, No. 1115, September Term, 2017

SEARCH INCIDENT TO ARREST; PROBABLE CAUSE; ODOR OF MARIJUANA

When analyzing whether probable cause existed to effectuate a warrantless arrest, "'we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.'" *Barrett v. State*, 234 Md. App. 653, 666 (2017), *cert. denied*, 457 Md. 401 (2018). The Maryland appellate courts consistently have held that the odor of marijuana provides probable cause to believe that marijuana is present, and therefore, the smell of marijuana emanating from a vehicle provides probable cause to believe that contraband or evidence of a crime will be in the vehicle authorizing a search of the vehicle. In determining whether the smell of marijuana gives probable cause to arrest a person, however, whether the person is in a vehicle or standing in a public place, the key inquiry is whether the circumstances sufficiently link that person to the suspected criminal activity. The odor of marijuana, if localized to a particular person, provides probable cause to arrest that person for the crime of possession of marijuana.

Here, the arresting officer smelled the odor of marijuana emanating from appellant's person. Although the possession of ten grams or less of marijuana has been decriminalized, the odor of marijuana remains evidence of a crime. Because the officer was able to localize the odor of marijuana to appellant, the officer had probable cause to arrest appellant and search him incident to that arrest.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1115

September Term, 2017

_____

RASHERD LEWIS

v.

STATE OF MARYLAND

_____

Graeff,
Nazarian,
Arthur,

JJ.

_____

Opinion by Graeff, J.
Concurring Opinion by Arthur, J.
Dissenting Opinion by Nazarian, J.

_____

Filed:  June 28, 2018

On July 24, 2017, Rasherd Lewis, appellant, pleaded not guilty, pursuant to an agreed statement of facts, to the charge of wearing, carrying, or transporting a handgun. The Circuit Court for Baltimore City found him guilty and imposed a sentence of three years' imprisonment, all but 90 days suspended, to be followed by three years of supervised probation.

On appeal, appellant contends that the circuit court erred in denying his motion to suppress the handgun recovered from his person.[1]  For the reasons set forth below, we disagree, and therefore, we shall affirm the judgment of the circuit court.

---

[1] Appellant presents the following questions for this Court's review:

1.      In violation of the Fourth Amendment and Article 26 of the Maryland Declaration of Rights, did the circuit court err by failing to conclude that Appellant was unlawfully "seized" when law enforcement officers immediately and physically stopped Appellant upon encountering him without articulable suspicion to do so?

2.      In violation of the Fourth Amendment and Article 26 of the Maryland Declaration of Rights, did the circuit court err in its "totality of the circumstances" analysis, given that (i) the record contains no evidence of the tipster's basis of knowledge and only blanket statements by the State's sole witness that the tipster was purportedly reliable, (ii) the State intentionally withheld all discovery about the non-confidential tipster prior to the suppression hearing and its sole witness refused to answer defense counsel's questions about the tipster's purported reliability, and (iii) the odor of marijuana emanating from Appellant did not, alone, give rise to probable cause to conduct a full-blown warrantless search of Appellant?

## FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 2017, Officer David Burch, Jr., an officer with the Baltimore City Police Department, received a tip that a black male, "with a certain clothing description" and a red bag, was in possession of a handgun in the area of Eutaw Street and Saratoga Street in Baltimore City. Officer Burch testified that the tip was "from a source of information," who was not a confidential informant, but rather, someone that Officer Burch had come into contact with who provided him information and "didn't want any monetary . . . gains out of it." Officer Burch testified that he had received information from this source for "a little less than a month," and the information had been reliable.[2]

After Officer Burch received the tip, he notified City Watch, individuals monitoring cameras in Baltimore City, that "there was a potentially armed individual in the 400 block of W. Saratoga," and he advised the operator of the description provided. City Watch subsequently identified an individual matching the description provided inside Bag Mart, located at 401 W. Saratoga Street. City Watch advised Officer Burch of this location.

Officer Burch was familiar with Bag Mart because the police received "numerous calls in reference to that store," and a lot of individuals sold drugs there. Moreover, the area surrounding the 400 block of W. Saratoga was known to Officer Burch as an "open air drug market" and "a high crime area." Officer Burch was qualified as an expert in the identification and packaging of marijuana, and he testified that there was "no other odor

---

[2] Defense counsel objected to Officer Burch's testimony regarding the tip because the State had refused to produce in discovery information requested regarding the source. The court overruled the objection.

like the odor of marijuana." He further testified that there was no difference in the odor of marijuana based upon the amount present.

When City Watch notified Officer Burch of appellant's location at Bag Mart, he and five other officers responded. Officer Burch explained that, when approaching someone who could be armed, the police "go in there, strength in numbers."

Bag Mart was a small store. When the officers arrived, it was crowded inside. Officer Burch smelled an odor of marijuana when he entered the store. He saw appellant with a red bag, located near the register. Appellant had some money in his hand and was moving towards the exit as if he had just made a purchase. Other customers, located in front of appellant, were in the process of exiting the store when the officers arrived.

Officer Burch approached appellant. When he was "literally right in front of" appellant, Officer Burch "smelled an odor of marijuana emitting from [appellant's] person." Officer Burch stated that the odor "could have been from his breath when I was speaking with him or on his person." Officer Burch then stopped appellant, based on "the odor of marijuana and the information that [he] received," searched appellant, and found a handgun in the red bag, which he described as a satchel.[3] Officer Burch admitted that he did "place [his] hands on [appellant] to [] detain him, to stop him."

---

[3] When Officer Burch seized appellant, he asked appellant if he had anything illegal on him. Appellant initially answered no, but he subsequently admitted to having "weed," the "street terminology for marijuana."

Officer Burch told appellant to put his hands up and guided appellant's hands up with his own. At that time, Officer Curtis was standing behind appellant.[4] Officer Burch testified that, when he told appellant to put his hands up, appellant subsequently brought his hands down, which was "an indicator" for the police, so "for everyone's safety," they put appellant in handcuffs.

While Officer Curtis was handcuffing appellant, Officer Burch searched appellant. In addition to finding a firearm in the red bag, Officer Burch recovered a zip lock baggie containing less than 10 grams of marijuana from appellant's jacket, as well as miscellaneous packaging material, believed to be for packaging marijuana.

In response to appellant's motion to suppress the items seized during the search, the State argued that Officer Burch testified to two grounds to stop and search appellant: (1) the tip that a person matching appellant's description had a handgun; and (2) the odor of marijuana. With respect to the odor of marijuana, the State explained that Officer Burch testified that he smelled it "on [appellant's] breath, on his person," and the odor of marijuana provided Officer Burch "the basis to permit a search."

Defense counsel first addressed the initial stop, asserting that there was no "reasonable, articulable suspicion for the initial stop and seizure of [appellant's] person." She contended:

> [I]t was clear from Officer Burch's testimony that the reason that he went to the store, that his purpose of going to the store was to stop [appellant] based solely on the information that he received from a tip from the source who he described not as an informant, but as some individual he has had contact with,

---

[4] The first name of Officer Curtis does not appear in the record.

4

but did not give further information as to exactly the nature of the contact or any benefit that individual might have been receiving.

Defense counsel argued that an anonymous tip providing a physical description of a person, without more, was insufficient to provide reasonable suspicion of wrongdoing.

"[S]econd and independent of that," counsel argued, there was "not a [] justification for a search of [appellant's] person and . . . there [was] immediately a full blown search of his person." She argued that there was not a *Terry* frisk,[5] but rather, there was a "full blown search" and "no lawful arrest that precede[d] this [] stop. So there [was] no lawful exception to the warrant requirement." Counsel argued that a person could not "lawfully be arrested for possession of less than ten grams of marijuana."

Defense counsel argued that the body-camera video showed that the police immediately grabbed appellant by the shoulder, and he was "already stopped and seized and [Officer Burch] already [began] this search," so the police could not "retroactively justify something based on [] something [the police] detects later," and he "can't search a person based on something that is an odor in the [] room." Counsel concluded by saying that the smell of marijuana does not justify a search of a person, and even if there was reasonable suspicion for the initial detention, the police could not "just immediately . . . begin to rummage [a] person's clothing, the pockets and bag."

In rendering its decision, the court noted that the tip led the officers to the store:

> In this case, the police officer's suspicions that [appellant] was carrying a red handbag with a gun arose not from his own individual observation . . ., but solely from a person whose information the officer had indicated that he had relied upon for the past month. In the case of being no

---

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

demonstration of the tipster's basis of knowledge, although the officer testified that his information had been reliable in the past.

> Um, now there are situations in which a tip, [] suitably corroborated[,] makes sufficient indicia of reliability to provide a reasonable suspicion to make an investigatory stop. Standing alone, the Court does not find that the tip itself justifies the *Terry* stop per *Alabama v. White*, 496 U.S. 325.

The court continued to discuss the case law, noting that reasonable suspicion "requires that a tip be reliable in its assertion of illegality . . ., not just in a tendency to identify the determined person." (quoting *Florida v. J.L.*, 529 U.S. 266 (2000)).

After finding that the tip did not justify the stop, the court stated that its "analysis does not end there." The court stated:

> The officer in this case testified that not only did he detect the odor of marijuana in the store, but that he detected the odor of marijuana coming from [appellant's] person specifically and the odor of marijuana emanating from [appellant] may be just as indicative of possession of more than ten grams or less than ten grams as indicated in *Robinson v. State*, 451 Md. 94 [(2017)]. Marijuana in any amount is still a Schedule 1 substance and making less than ten grams decriminalized, it is still subject to seizure and forfeiture. *Robinson* also further states that it's unreasonable to expect a police officer based on odor to determine the weight of any substance. . . . [F]ollowing the reasoning . . . of *Robinson*, it would appear that the odor of marijuana emanating from a person provides probable cause to believe that that person contains evidence of a crime, a police officer may search that person under such circumstances.

Finally, noting that it must consider "the totality of these circumstances" and "the facts known to the police officers at the time of the encounter," the court stated:

> The Court does not believe that the tip alone justifies the officer's immediate stop and frisk of [appellant] even though he may have had some indicia [of] reliability with regard to the information that it acted upon. However, the issue of the smell of marijuana, the Court finds allows the fluidity of the concept of probable cause. . . . That is, no bright line or rigid [rules] or mechanical or mathematically certain rules detecting the odor of marijuana is what the officer indicates that he knew prior to the search as

6

immediate as it may have been. It establishes probable cause to search as the police officers have probable cause that [appellant] may have had contraband, that is marijuana. That probable cause le[]d to the finding of the gun.

The motion to suppress is denied.

## DISCUSSION

Appellant contends that the circuit court erred in denying his motion to suppress, for two reasons. First, he asserts that, although the court correctly determined that the police did not have reasonable suspicion to seize him based on the tip received, and only had reasonable suspicion to seize him upon detecting the odor of marijuana, the court erred in failing to conclude that appellant was unlawfully seized. Specifically, appellant asserts that the court "failed to conclude what the record unequivocally demonstrates: that Officer Curtis (and then Officer Burch) immediately seized Appellant before Officer Burch detected an odor of marijuana on Appellant."

Second, appellant contends that, even if he was not immediately seized, the court "erred in its 'totality' analysis." In that regard, he argues that the court erred in finding that the police had probable cause to support the search of his person because: (1) the court improperly considered evidence of the tip; and (2) the odor of marijuana did not give the police "grounds to immediately search or arrest" him.

The State contends that "the circuit court correctly denied [appellant's] motion to suppress a handgun that police recovered from his person incident to arrest." Although it addresses the specific claims raised by appellant, it asserts that "[t]he essential question in this case . . . comes down to whether the circuit court was correct that the police possessed

7

probable cause to arrest and search [appellant] at the moment the police seized him because the officers detected the scent of marijuana." The State agrees that appellant was seized when the police placed their hands on him, but it argues that, whether the encounter "was an investigatory detention or an arrest, or whether it evolved from one to another and when, are largely academic questions because . . . the officers' conduct was maximally authorized by probable cause from the start of the encounter based on the scent of marijuana."

In reviewing a ruling on a suppression motion, we apply the following standard of review:

> We review a denial of a motion to suppress evidence seized pursuant to a warrantless search based on the record of the suppression hearing, not the subsequent trial. *State v. Nieves*, 383 Md. 573, 581, 861 A.2d 62 (2004). We consider the evidence in the light most favorable to the prevailing party, here, the State. *Gorman v. State*, 168 Md. App. 412, 421, 897 A.2d 242 (2006) (Quotation omitted). We also "accept the suppression court's first-level factual findings unless clearly erroneous, and give due regard to the court's opportunity to assess the credibility of witnesses." *Id.* "We exercise plenary review of the suppression court's conclusions of law," and "make our own constitutional appraisal as to whether an action taken was proper, by reviewing the law and applying it to the facts of the case." *Id.*

*Goodwin v. State*, 235 Md. App. 263, 274 (2017) (quoting *Bowling v. State*, 227 Md. App. 460, 466-67 (2016)), *cert. denied,* 457 Md. 671 (2018). *Accord Robinson v. State*, 451 Md. 94, 108 (2017).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *See Jones v. State*, 407 Md. 33, 51 (2008).[6] Whether a search or

---

[6] The Fourth Amendment provides:

8

seizure is unreasonable under the Fourth Amendment "'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Sellman v. State*, 449 Md. 526, 540 (2016) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1997)). *Accord Robinson*, 451 Md. at 108.

A Fourth Amendment seizure occurs when, "'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Swift v. State*, 393 Md. 139, 152-53 (2006) (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). A warrantless seizure generally is unreasonable unless supported by probable cause or reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Lee v. State*, 311 Md. 642, 652 (1988). For example, an investigatory detention, commonly known as a *Terry* stop, will not violate the Fourth Amendment "as long as the officer has a reasonable, articulable suspicion of criminal activity." *Swift*, 393 Md. at 150. An arrest, likewise, will not violate the Fourth Amendment if an officer has "probable cause to believe that a person has committed or is committing a crime." *Id.*

With respect to a warrantless search, the general rule is that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se*

---

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

9

unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Goodwin*, 235 Md. App. at 278 (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). *Accord State v. Johnson*, __ Md. __, No. 22, Sept. Term, 2017, slip op. at 13 (filed Apr. 20, 2018). One such exception is a search incident to arrest. *Grant v. State*, 449 Md. 1, 16 n. 3 (2016); *Barrett v. State*, 234 Md. App. 653, 662 (2017), *cert. denied*, 457 Md. 401 (2018). This Court has explained the search incident to arrest exception, as follows:

> [A] police officer with probable cause to believe that a suspect has or is committing a crime may arrest the suspect without a warrant. *See Brinegar v. United States,* 338 U.S. 160, 176 (1949). . . . Once lawfully arrested, police may search "the person of the arrestee" as well as "the area within the control of the arrestee" to remove any weapons or evidence that could be concealed or destroyed. *United States v. Robinson*, 414 U.S. 218, 224 (1973).

*Barrett*, 234 Md. App. at 664 (quoting *Conboy v. State*, 155 Md. App. 353, 364 (2004)). Accordingly, "[a]ny container within an arrestee's immediate control at the time of arrest is subject to a contemporaneous search incident to that arrest." *Ricks v. State*, 322 Md. 183, 194 (1991).

With this background in mind, we turn to the parties' contentions.

## I.

### Officer Curtis' Initial Seizure of Appellant

Relying on the body-camera footage introduced into evidence, appellant contends, and the State agrees, that appellant "was seized within the meaning of the Fourth Amendment" when Officer Curtis grabbed his arm. Appellant argues, however, again relying on the body-camera footage, that Officer Curtis grabbed his arm prior to the time

10

that Officer Burch detected the odor of marijuana emanating from him. He asserts, therefore, that Officer Curtis did not have a lawful basis to seize him, and the evidence subsequently found should have been suppressed.

A review of the body-camera footage does not reflect where Officer Burch was when Officer Curtis initially touched appellant's arm. It does reflect, however, that within one second or less, Officer Burch was in front of appellant telling him to put his hands up.[7] Although appellant hinges his argument on appeal on this sequence of events during a fast moving situation, he never raised this argument below or suggested that the timing of Officer Curtis' actions had any bearing at all on the suppression issue. And the circuit court did not address the significance or timing of Officer Curtis' action in grabbing appellant because the issue was not raised at the suppression hearing. Under these circumstances, the issue is not preserved for this Court's review. *See* Maryland Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issues unless it plainly appears by the record to have been raised in or decided by the trial court."); *Ray v. State*, 435 Md. 1, 19 (2013) (where a defendant advances one theory of suppression pursuant to Maryland Rule 4-252, but fails to argue an additional theory that it later asserts on appeal,

---

[7] As indicated, Officer Burch testified that he smelled marijuana when he was in front of appellant, and he stopped appellant based on the smell of marijuana, as well as the tip.

the defendant has "waived the right to have that claim litigated on direct appeal.").[8]

Accordingly, we will not address this contention.

## II.

## Search Incident to Arrest

Appellant next contends that the police did not have probable cause "to conduct a full-blown warrantless search of Appellant's person based solely upon the odor of marijuana *on Appellant's breath*."[9] The State argues that the circuit court properly determined that the detection of the odor of marijuana emanating from appellant's person provided probable cause to arrest and search appellant.

When analyzing whether probable cause existed to effectuate a warrantless arrest, "'we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.'" *Barrett*, 234 Md. App. at 666 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). In *Barrett*, we explained the standard for probable cause as follows:

> Probable cause to arrest "exists where the facts and circumstances within the knowledge of the officer at the time of the arrest, or of which the officer has reasonably trustworthy information, are sufficient to warrant a

---

[8] We also note that defense counsel subsequently filed a motion to reconsider the denial of the motion to suppress, which again did not argue that Officer Curtis' actions were significant, but instead, assumed that Officer Burch made the initial contact and focused on the reliability of the tip and the significance of the odor of marijuana. This motion subsequently was withdrawn by counsel.

[9] Appellant also contends that the finding of probable cause was based on "improperly admitted evidence of the tipster's reliability." A review of the court's ruling, set forth *supra*, shows that this contention has no merit. Rather, the court based its probable cause ruling on Officer Burch's testimony that he smelled the odor of marijuana emanating from appellant's person.

12

prudent person in believing that the suspect had committed or was committing a criminal offense." *Moulden v. State*, 212 Md. App. 331, 344, 69 A.3d 36 (2013) (quoting *Haley v. State*, 398 Md. 106, 133, 919 A.2d 1200 (2007)). The probable cause standard is "a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Pringle*, 540 U.S. at 370, 124 S. Ct. 795 (quotation marks and citations omitted). It is "not reducible to precise definition or quantification." *Robinson,* 451 Md. at 110, 152 A.3d 661 (quoting *Florida v. Harris*, 568 U.S. 237, 133 S. Ct. 1050, 1055, 185 L. Ed. 61 (2013)). Rather, "[p]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Pringle*, 540 U.S. at 370–71, 124 S. Ct. 795 (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)). "A finding of probable cause requires less evidence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion." *Moulden*, 212 Md. App. at 344, 69 A.3d 36 (quoting *Haley*, 398 Md. at 133, 919 A.2d 1200).

*Id.* "Probable cause, we must remember, is not a 'high bar.'" *Johnson*, slip op. at 23 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)).

The Maryland appellate courts consistently have held that the odor of marijuana provides probable cause to believe that marijuana is present. *See, e.g.*, *Robinson*, 451 Md. at 133 ("the odor of marijuana remains evidence of a crime."); *Bowling*, 227 Md. App. at 469 (a K-9 alert to the odor of marijuana establishes probable cause to conduct a warrantless search of a vehicle); *Wilson v. State*, 174 Md. App. 434, 454 ("The odor of marijuana emanating from a vehicle provides probable cause to believe that additional marijuana is present elsewhere in the vehicle."), *cert. denied*, 400 Md. 649 (2007), *cert. denied*, 552 U.S. 1191 (2008); *State v. Harding*, 166 Md. App. 230, 240 (2005) ("odor of marijuana alone can provide a police officer probable cause to search a vehicle"), *cert. denied*, 393 Md. 161 (2006); *Ford v. State*, 37 Md. App. 373, 379-80 ("knowledge gained from the sense of smell alone" may provide probable cause to believe a "crime is being

13

committed in the presence of the officer"), *cert. denied*, 281 Md. 737 (1977). *Cf. Bailey v. State*, 412 Md. 349, 375-36 (2010) (distinguishing marijuana, which is contraband and has a distinctive identifying odor, from ether).

To be sure, many of the cases address the odor of marijuana in the context of the smell emanating from a vehicle and probable cause to conduct a vehicle search, and this case involves the smell of marijuana emanating from a person and probable cause to arrest. Although the underlying inquiry in these two contexts is different, the level of evidence required to constitute probable cause is the same in both contexts. As the United States Court of Appeals for the Fourth Circuit stated in *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004):

> It is true that the inquiries about whether the facts justify a search are different from whether they justify a seizure. In the search context, the question is whether the totality of circumstances is sufficient to warrant a reasonable person to believe that contraband or evidence of a crime will be found in a particular place. *Ornelas,* 517 U.S. at 696, 116 S. Ct. 1657; *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Whereas in the arrest context, the question is whether the totality of the circumstances indicate to a reasonable person that a "suspect has committed, is committing, or is about to commit" a crime. *DeFillippo,* 443 U.S. at 37, 99 S. Ct. 2627. But in both cases, the quantum of facts required for the officer to search or to seize is "probable cause," and the quantum of evidence needed to constitute probable cause for a search or a seizure is the same. 2 Wayne R. LaFave, *Search & Seizure* § 3.1(b) (3d ed.1996).

*Accord State v. Wallace*, 372 Md. 137, 147 n. 3 (2002) ("It does not take more probable cause to support a warrantless arrest than it does to support a warrantless . . . search.") (quoting *State v. Funkhouser*, 140 Md. App. 696, 721 (2001)), *cert. denied*, 540 U.S. 1140 (2004).

14

Because the underlying inquiry is different in the two contexts, the smell of marijuana can provide probable cause in one context and not the other. Although the smell of marijuana emanating from a vehicle provides probable cause to believe that contraband or evidence of a crime will be in the vehicle, authorizing a search of the vehicle, *Robinson*, 451 Md. at 125; *Bowling*, 227 Md. at 476, it may, or may not, provide probable cause to believe that a particular occupant of the vehicle is committing or has committed a crime, thereby authorizing an arrest of that occupant. *See, e.g.*, *Wallace*, 372 Md. at 155-56 (narcotics dog's alert to vehicle does not, without additional circumstances linking drugs to passenger, provide probable cause to arrest passenger); *Barrett*, 234 Md. App. at 667 (probable cause to arrest passenger where odor of marijuana emanating from vehicle linked to passenger by smell emanating from passenger's person and passenger's admission to smoking marijuana and handing the officer a cigar); *Ford*, 37 Md. App. at 375, 379-80 (arrest of driver based on smell of marijuana emanating from his person and interior of car was supported by probable cause); *State v. Mitchell*, 482 N.W.2d 364, 368-69 (Wis. 1992) (probable cause to arrest where officer smelled marijuana and observed smoke in the vehicle). *Cf. Pringle*, 540 U.S. at 372 (probable cause to arrest all occupants of vehicle where the facts permitted an inference that all of the occupants had knowledge of, and exercised control over, drugs found in vehicle).

In determining whether the smell of marijuana gives probable cause to arrest a person, whether the person is in a vehicle or standing in a public place, the key inquiry is whether the circumstances sufficiently link that person to the suspected criminal activity. "[I]f an officer smells the odor of marijuana in circumstances where the officer can localize

15

its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana." *Humphries*, 372 F.3d at 659.

In *Humphries*, police officers on patrol in a high crime area exited their patrol car and approached a group of persons "hanging outside." *Id.* at 655. They "smelled a strong odor of marijuana." *Id.* Humphries turned and quickly walked away. *Id.* One officer followed Humphries, and when he "got to within 5 to 10 feet of Humphries, he smelled 'the same strong odor of marijuana . . . coming off of [Humphries'] person' as that which he had smelled upon exiting the patrol car." *Id.*

The officer instructed Humphries to stop several times, but Humphries continued to walk away. *Id.* at 655-56. The officer arrested Humphries, and he "smelled the odor of marijuana on Humphries' breath." *Id.* at 656. In holding that the officer had probable cause to believe that Humphries had committed, was committing, or was about to commit a crime, the court noted that it had "repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." *Id.* at 658. The court stated that, although the odor of marijuana would not authorize the police to arrest any person in the vicinity of the smell, "if an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana." *Id.* at 659.

Thus, in that case, the police did not have probable cause to arrest Humphries when they smelled the odor of marijuana upon exiting the patrol car approximately 20 feet from

16

Humphries, when the odor could not be "tied to Humphries alone." *Id.* When the officer followed Humphries and smelled the "same strong odor of marijuana" emanating from Humphries' person, however, he was able to localize the source of the odor to Humphries, and he had probable cause to arrest Humphries for possession of marijuana. *Id.* at 659-60.[10]

Similarly, in *United States v. Paige*, 870 F.3d 693, 700-01 (7th Cir. 2017), the United States Court of Appeals for the Seventh Circuit held that the smell of marijuana emanating from Paige's person gave the police probable cause to arrest Paige for marijuana possession. The court stated that "the odor of marijuana, if sufficiently localized to a specific person, provides probable cause to arrest that person for the crime of marijuana possession." *Id.* at 700.[11]

The court also held that the police had probable cause to arrest Paige for operating a vehicle while under the influence of an intoxicant based on the additional factors that Judge Arthur highlights in his concurring opinion, i.e., that Paige's car had been stopped

---

[10] The court held that the odor of marijuana emanating from Humphries provided probable cause to arrest him for possession of marijuana. *United States v. Humphries*, 372 F.3d 653, 659-60 (4th Cir. 2004). It then discussed "other factors" that "strengthen the conclusion" that there was probable cause to arrest, including Humphries' evasive conduct and that the encounter took place in an area known for drug trafficking. *Id.* at 660.

[11] To be sure, in *United States v. Paige*, 870 F.3d 693, 700 n. 19 (2017), the court stated in a footnote that, because possession of marijuana was a crime in Wisconsin, it did not reach "the questions that might arise in a state that permits medical marijuana, or a state that has legalized marijuana across-the-board." *Id.* at 700 n. 19. As discussed, *infra*, the Maryland Court of Appeals in *Robinson*, 451 Md. at 133-34, directly addressed the issue of decriminalization of marijuana and held that, despite the Maryland law decriminalizing the possession of less than ten grams of marijuana, "the odor of marijuana remains evidence of a crime."

in the drive-through lane of the McDonald's for such a long time that an employee called 911 regarding concern that the person was sick or injured, and that Paige continued to be drowsy when he walked with the officer to the police wagon. *Id.* at 701. The discussion regarding probable cause to arrest for marijuana possession, however, focused solely on the smell of marijuana coming from Paige's person. *Id.* at 700-01.

Other courts agree that, if the odor of marijuana is sufficiently localized to a specific person, the police have probable cause to arrest that person for the crime of marijuana possession. *See United States v. Wright*, 844 F.3d 759, 762-63 (8th Cir. 2016) ("Once the uniformed officer detected an odor of marijuana coming from Wright's person, the officer had probable cause to arrest Wright."), *cert. denied*, 137 S. Ct. 2279 (2017); *United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010) (officer had probable cause to arrest defendant after detecting odor of marijuana emanating from his person), *cert. denied*, 563 U.S. 992 (2011); *State v. T.T.*, 594 So.2d 839, 840 (Fla. Dist. Ct. App. 1992) (given the distinctive odor of marijuana, officer had probable cause to believe the defendant was in possession of cannabis "based solely on the very strong smell of burned marijuana residue, which [the officer] detected coming from [the defendant] as he walked past [the officer] at the entrance doorway."); *Edmond v. State*, 951 N.E.2d 585, 591 (Ind. Ct. App. 2011) (where officer smelled odor of marijuana in car and on Edmond's breath, he had a basis to believe that Edmond possessed marijuana and probable cause to arrest him.).

That the possession of ten grams or less of marijuana has been decriminalized does not change this analysis.[12] Appellant acknowledges, as he must, that the Court of Appeals has stated that, despite the decriminalization of possession of less than ten grams of marijuana, the odor of marijuana "remains evidence of a crime" and provides probable cause to search a vehicle. *Robinson*, 451 Md. at 133, 137. In so concluding, the Court noted that the odor of marijuana "may be just as indicative of crimes such as the possession of more than ten grams of marijuana, [or] possession of marijuana with the intent to distribute . . . as it is of possession of less than ten grams of marijuana," and it is "unreasonable to expect law enforcement officers to determine, based on odor alone, the difference between 9.99 grams or less of marijuana and 10 grams of marijuana." *Id.* at 133-34.

---

[12] As the Court of Appeals explained in *Robinson*, 451 Md. at 97-98:

> Before October 1, 2014, under Maryland law, possession of less than ten grams of marijuana was a misdemeanor that carried a maximum penalty of ninety days of incarceration and a fine of $500. See 2014 Md. Laws. 1119 (Vol. II, Ch. 158, S.B. 364); Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2013 Supp.) § 5–601(c)(2)(ii). As of October 1, 2014, under Maryland law, possession of less than ten grams of marijuana became "a civil offense" that is punishable by participation in a drug education program, an assessment for substance abuse disorder, possible substance abuse treatment, and a fine, the amount of which depends on whether the violation is a first, second, or subsequent violation of the statute. See 2014 Md. Laws. 1119, 1124 (Vol. II, Ch. 158, S.B. 364); Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2014 Supp.) § 5–601(c)(2).

Appellant was arrested on February 1, 2017, after this law took effect.

19

Nevertheless, appellant asserts that the change in status of marijuana possession "cannot be ignored in the probable cause analysis" regarding the right to arrest a person in a public place. This Court rejected a similar contention in *Barrett*, 234 Md. App. at 671-72. In that case, after determining that the police had probable cause to believe that Barrett was in possession of marijuana,[13] we discussed the analysis in *Robinson*, 451 Md. at 122-23, that, "even though possession of a small amount of marijuana had been decriminalized, it still suggested criminal activity." *Barrett*, 234 Md. App. at 668-69. We held that "a police officer who has reason to believe that an individual is in possession of marijuana has probable cause to effectuate an arrest, even if the officer is unable to identify whether the amount possessed is more than 9.99 grams." *Id.* at 671.

Here, there was probable cause to believe that appellant was, or had been, in possession of marijuana. In so concluding, we do not suggest that a general odor of marijuana in a certain location provides probable cause to arrest a person in the area. Indeed, the general odor of marijuana that the officers smelled when they initially entered the store would not provide probable cause to arrest appellant because it "could not initially be tied to" appellant alone. *Humphries*, 372 F.3d at 659. Officer Burch testified, however, testimony that the circuit court credited, that he detected the odor of marijuana emanating

---

[13] In *Barrett v. State*, 234 Md. App. 653, 667-68 (2017), *cert. denied*, 457 Md. 401 (2018), we noted that the case did not involve "the mere odor of marijuana" in a vehicle, but rather, the police were able to connect Barrett to the marijuana smelled in the vehicle based on the smell of marijuana that emanated from Barrett's person, his admission to smoking marijuana, and his action in handing the officer a cigar.

20

from appellant's person as he "stood face-to-face" with appellant, and based on this odor, he stopped and searched appellant.

We hold, consistent with authority in other jurisdictions, that the odor of marijuana, if localized to a particular person, provides probable cause to arrest that person for the crime of possession of marijuana. Here, where Officer Burch smelled the odor of marijuana emanating from appellant's person and localized to appellant, he had probable cause to arrest appellant and search him incident to that arrest. *See Barrett*, 234 Md. App. at 672 (search incident to arrest exception applies as long as search is "essentially contemporaneous with the arrest") (quoting *Wilson v. State*, 150 Md. App. 658, 673 (2003)); *Conboy*, 155 Md. App. at 367.[14]  Accordingly, the circuit court properly denied the motion to suppress the evidence recovered during the lawful search incident to arrest.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[14]  I disagree with the dissent that this result cannot be reconciled with *Norman v. State*, 452 Md. 373, 412, 428 (2017), in which a majority of the Court of Appeals held that the "odor of marijuana alone emanating from a vehicle with multiple occupants does not give rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and subject to frisk." The Court in *Norman* focused, as we do here, on whether the requisite suspicion for a Fourth Amendment intrusion is satisfied with respect to the specific individual subject to the intrusion. It determined that there were no circumstances that gave rise to reasonable suspicion that Norman, the front passenger in the vehicle, was armed and dangerous, and therefore, the frisk of Norman was improper. *Id.* at 426. Our determination here, that the smell of marijuana localized to appellant provided probable cause to believe that appellant had committed the crime of possession of marijuana authorizing an arrest and search incident to arrest, is not inconsistent with that decision.

21

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1115

September Term, 2017

_____

RASHERD LEWIS

v.

STATE OF MARYLAND
_____

Graeff,
Nazarian,
Arthur,

JJ.
_____

Concurring Opinion by Arthur, J.
_____

Filed: June 28, 2018

I agree with Judge Graeff that the appellant, Rasherd Lewis, did not preserve his contention that Officer Curtis seized him before Officer Burch claims to have detected the odor of marijuana on his person or his breath (it is not entirely clear which). I am, however, extremely troubled by the conclusion that the officers had probable cause to arrest Lewis and to conduct a search incident to arrest solely because one of them claimed to smell marijuana on his person or his breath when they were "right in front of him" and were about to seize him anyway on the basis of a tip that, everyone agrees, was insufficient to justify any intrusion on their part.

If I were writing on a blank slate, I would reverse the conviction. I join Judge Graeff's opinion only because I believe that I am constrained to do so by the implications of the Court of Appeals' decision in *Robinson v. State*, 451 Md. 94 (2017), which held that, despite the decriminalization of simple possession of less than 10 grams of marijuana, the odor of marijuana is "evidence of a crime" (*id*. at 133) that provides probable cause to search a vehicle. *Id.* at 130, 137.

In the bygone era of complete marijuana prohibition, when judges still spelled "marijuana" with an "h," this Court held that a police officer had probable cause to arrest the driver of an automobile because the smell of marijuana was coming from both the interior of the car and from his clothes. *Ford v. State*, 37 Md. App. 373, 379-80 (1977). But neither before nor since the partial decriminalization of marijuana in 2014 has any Maryland court actually gone so far as to hold that the mere odor of marijuana on

someone's person or breath can itself provide probable cause for an arrest and a search incident to arrest.

In *Barrett v. State*, 234 Md. App. 653 (2017), *cert. denied*, 457 Md. 401 (2018), which is cited at several places in Judge Graeff's opinion, this Court held that police officers had probable cause to arrest the passenger of an automobile when they "not only smelled marijuana in the vehicle, they smelled it on [the passenger], and he admitted to smoking marijuana and handed the officer a cigar." *Id.* at 667-68. In upholding the arrest and the search incident to it, however, we expressly cautioned that that case "d[id] *not* involve the mere odor of marijuana." *Id.* at 667 (emphasis added). *Barrett* does not compel us to affirm the conviction in this case.

Virtually none of the cases from other jurisdictions support the proposition that a law enforcement officer has probable cause to arrest and search a person solely because he has the odor of marijuana on his person or breath. In *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004), which is discussed at length in Judge Graeff's opinion, an officer smelled the "strong odor of marijuana . . . coming off [Humphries's] person" from a distance of five to ten feet away after Humphries had "quickly walked away" from him. (Ellipsis in original.) As the officer pursued Humphries up to "the door of [a] residence that he entered to evade the officer" (*id.*), "the odor of marijuana followed Humphries down the street[.]" *Id.* The officer seized Humphries, patted him down, and found a gun, some Percocet tablets, and some crack cocaine. *Id.* at 656. On those facts, two judges

2

concluded that the officer had probable cause to believe that Humphries possessed

marijuana and, hence, had probable cause to arrest him. *Id.* at 659-60.[1]

It is a far cry from *Humphries* to this case. In *Humphries* the officer could tell

from a considerable distance that the suspect was leaving the scent of marijuana in his

wake as he "quickly walked away" from the officer in an effort to "evade" an interaction

with the police; in this case, by contrast, the suspect had just completed a purchase at a

convenience store when the officers suddenly seized him, purportedly because they could

detect the scent of marijuana on his person or his breath from about a foot away.

*Humphries* does not go so far as to authorize the arrest in this case.

Furthermore, "[o]ther factors strengthen[ed]" the *Humphries* court's conclusion

that the officer had probable cause to arrest the suspect. *Id.* at 660. As Humphries

"walked away" from the officer "at a quick pace," he "ignor[ed] the officer's commands

to stop." *Id.* "He also ignored the officer's command to stop before he entered a

residence." *Id.* Not only would this "evasive conduct . . . suggest culpability to a

reasonable officer" (*id.*), but the officers also observed that, "as [they] approached in their

marked patrol car, Humphries patted his waist," which one of them "interpreted as a

'security check,' an instinctive check by Humphries to see that his weapon was in place."

*Id.* Because none of those factors are even remotely present in this case, I do not see

---

[1] The third member of the panel, Judge Gregory, concurred in the judgment, but did not join the majority's conclusion that the officer had probable cause to arrest Humphries. Judge Gregory would have held only that the officer had reasonable suspicion to conduct a less intrusive investigative stop and pat-down of the suspect under *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Humphries*, 372 F.3d at 661 (Gregory, J., concurring).

3

*Humphries* as authority to conclude that the officers had probable cause to arrest Lewis solely because he had the odor of marijuana on his person or his breath.

I have a similar perspective on *United States v. Paige*, 870 F.3d 693 (7th Cir. 2017), which Judge Graeff also discusses in her opinion. In that case, the employee of a fast-food restaurant called 911 because Paige had fallen asleep in his car in the restaurant's drive-through lane. *Id.* at 697. When a police officer arrived, "she detected a strong odor of fresh marijuana coming from" Paige. *Id.*; *see also id.* at 700 (upon approaching Paige, the officer "'could smell this strong skunky smell'" of marijuana "'coming from off his person'"). Additionally, Paige appeared to be intoxicated. *Id.* at 697. He claimed that he "had just fallen asleep" (*id.*), which "seemed suspicious" to the officer, because he "had been asleep in a drive-through lane for about an hour." *Id.* Because she suspected that Paige might possess marijuana or a firearm, the officer patted him down and found a gun. *Id.* After placing him under arrest, she found marijuana, crack cocaine, drug-packaging materials, and a digital scale in his car. *Id.*

Although the *Paige* court proceeded as though the officer had probable cause to make an arrest because of the strong odor of fresh marijuana that was emanating from Paige's person (*id.* at 700-01), the case cannot be fairly read to imply that the finding of probable cause was based on the odor of marijuana alone, in isolation from other factors, such as Paige's unusual behavior, his obvious intoxication, and his implausible explanation for his conduct. *Paige* is certainly not authority for the proposition that if an officer claims to smell marijuana from perhaps a foot away, he has probable cause, *ipso*

4

*facto*, to arrest and search someone who was simply putting away his change after making a purchase in a convenience store.[2]

To spare the reader an exegesis of each of the several other cases cited by Judge Graeff, suffice it to say that, in my assessment, the only one that goes nearly as far as this case is *State v. T.T.*, 594 So.2d 839 (Fla. Dist. Ct. App. 1992). In that case, a sheriff searched T.T., a juvenile, because "he smelled a very strong odor of smoked cannabis emanating" from the young man as he walked through a doorway where the sheriff was standing. *Id.* at 840. A trial judge suppressed the small amount of marijuana that was found in the resulting search (*see id.*), but did not explain his rationale. *See id.* at 841 (Dauksch, J., dissenting). On appeal, in a one-page majority opinion, two of the three judges voted to reverse, asserting, with little analysis or explanation, that the sheriff had

---

[2] As Judge Graeff recognizes, the *Paige* court expressly stated that its "discussion of probable cause should be understood to relate only to the facts and legal background" of that case (*Paige*, 870 F.3d at 700 n.19), which arose in Wisconsin, a state that had not (and has not yet) decriminalized marijuana. *See id.* The *Paige* court added that it "ha[d] no need to reach, and d[id] not reach, the questions that might arise in a state the permits medical marijuana, or a state that has legalized marijuana possession across-the-board." *Id.* In these circumstances, one might reasonably question how *Paige* could dictate the analysis of probable cause in a state like Maryland, which permits the purchase and use of medical marijuana and has decriminalized the possession of small amounts of marijuana for personal use. More broadly, one might question whether older decisions, from the era of complete marijuana prohibition, should apply in full force in light of the partial decriminalization of marijuana and the adoption of an elaborate regulatory mechanism for the distribution and possession of medical marijuana. The Court of Appeals, however, appears to disagree. In *Robinson*, 451 Md. at 128, the Court cited the "plain language and legislative history" of the 2014 legislation in support of its conclusion that "the General Assembly, in decriminalizing possession of small amounts of marijuana, did not intend to otherwise alter existing case law concerning the search, seizure, and forfeiture of marijuana, which remain illegal."

5

probable cause to arrest T.T. The third judge dissented on the ground that the trial judge may not have believed the sheriff (who was the sole witness) and that the appellate court could not disturb that finding. I am unpersuaded by the scanty reasoning in that divided opinion.

If cases like *Ford*, *Barrett*, *Humphries*, *Paige*, and *T.T.* were the only ones at hand, I would not extend them to approve the arrest and search of someone who was, from all outward appearances at least, a law-abiding citizen, solely because the odor of what appears to have been burnt marijuana was detectable on his breath from about a foot away.[3] I believe, however, that in *Robinson* the Court of Appeals set out an analytical framework that leaves me no choice but to affirm the conviction in this case.

In *Robinson*, 451 Md. at 99, the Court held that a law enforcement officer has probable cause to search a vehicle if he or she detects the odor of marijuana emanating from it. The Court reasoned that even though Maryland no longer treats the possession of small quantities as a criminal offense, marijuana in any amount "remains contraband." *Id.* The Court added that "the odor of marijuana gives rise to probable cause to believe that the vehicle contains contraband or evidence of a crime." *Id.* In short, despite partial decriminalization, the Court said, "the odor of marijuana remains evidence of a crime." *Id.* at 133.

---

[3] The sketchy record in this case does not definitively establish whether the officer claimed to have smelled burnt, as opposed to raw, marijuana. But because it is ludicrous to suppose that Mr. Lewis could somehow have gotten the odor of raw marijuana on his breath, it is only reasonable to infer that the officer claimed to have smelled burnt marijuana or marijuana smoke.

Furthermore, even though each of the consolidated cases in *Robinson* involved the "strong" or "overwhelming" odor of marijuana, the Court of Appeals expressly declined to restrict its decision to situations in which an officer detects a powerful scent. *Id.* at 130. Instead, the Court concluded that "the odor of marijuana," apparently even if faint or weak, "provides probable cause to search a vehicle." *Id.*

*Robinson* concerns probable cause for the warrantless search of an automobile and not probable cause to make an arrest (and then to conduct a search incident to the arrest). Judge Graeff correctly observes, however, that the principles are largely the same in both contexts. Therefore, if "the odor of marijuana remains evidence of a crime" in the context of a vehicle search, as *Robinson* said (*id*. at 133), it presumably "remains evidence of a crime" in the context of a warrantless arrest. Because a law enforcement officer can make a warrantless arrest if he or she has probable cause to believe that a suspect had committed or is committing a crime (*Barrett v. State*, 234 Md. App. at 666), it follows that an officer may arrest a person solely on the basis of the smell – apparently even the faint or weak smell – of marijuana emanating from his or her person or breath.[4]

---

[4] If *Robinson* did not require me to draw this conclusion, I would not regard it as inevitable. Under Maryland law, an officer may make a warrantless arrest if the officer has probable cause to believe that a crime (either a felony or misdemeanor) is being committed in the presence or view of the officer, and the officer reasonably believes that the person committed the crime. Md. Code (2001, 2008 Repl. Vol.), § 2-202(b) of the Criminal Procedure Article. But based on the mere odor of burnt marijuana on a person's clothes, hair, or breath, it is equivocal at best that, at some point in the past, he or she committed a misdemeanor (possession of 10 or more grams of marijuana), as opposed to a civil offense (possession of less than 10 grams of marijuana). *See* Md. Code (2001, 2012 Repl. Vol., Supp. 2017), § 5-601(c) of the Criminal Law Article. It is even more equivocal that the person currently possesses marijuana in any amount, much less an amount that would qualify for a misdemeanor prosecution.

7

It is undeniable that the decision in this case will result in injustice. If a person has the odor of burnt marijuana on his breath, it is likely that he recently had temporary possession of at least a small amount of the substance, but it is nowhere near as likely that he currently possesses any amount of it, much less an amount that would subject him to criminal penalties. Yet, under the decision in this case, he is subject to the indignity of an arrest and a search incident to an arrest. Worse yet, if the search turns up nothing, he has no civil remedy, because the officers will not have violated his civil rights – the mere odor of marijuana on his person or breath gave them the right to arrest and search him.

Furthermore, if the mere odor of burnt marijuana on a citizen's breath gives the police probable cause to make an arrest, it would seem to follow that the odor of marijuana smoke on a person's clothes or hair would give probable cause as well. If so, it is not difficult to imagine scenarios in which police officers would have probable cause to arrest and search someone whose only exposure to marijuana is from second-hand smoke – e.g., someone who was standing inside a bus enclosure in the rain while others smoked marijuana; someone whose family members or housemates smoke marijuana; someone who borrowed a piece of clothing or outerwear from an acquaintance who smokes marijuana; someone who just came from a concert at which members of the audience were smoking marijuana; etc. In fact, the officers would have probable cause to arrest and search someone who got off a bus or subway train in Maryland after smoking marijuana in the District of Columbia, where the private use and possession of up to two ounces has been *legalized* (and not merely decriminalized). D.C. Stat. Ann. § 48-904.01(a)(1) (West 2018). I would have thought that the reform of Maryland's marijuana

8

laws was intended to reduce rather than facilitate intrusive searches in circumstances such as these.

The facts of this case suggest that our conclusion will not only result in injustices, but may encourage overreaching or abuse. Here, the officers were about to seize Lewis, in violation of the Fourth Amendment, on the basis of an inadequately corroborated tip that yielded neither probable cause for an arrest nor reasonable suspicion for an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968). One officer claimed that, a fraction of a second before he and his colleagues were about to violate Lewis's Fourth Amendment rights, he happened to smell the odor of marijuana on Lewis's person or breath. However dubious or convenient the officer's claim might appear to some, we are required to accept it, because the circuit court credited the officer's testimony. *See, e.g.*, *Goodwin v. State*, 235 Md. App. 263, 274 (2017), *cert. denied*, 457 Md. 671 (2018). Hence, the allegedly serendipitous discovery of the faint odor of marijuana, if believed by a trial court, can instantaneously transform a civil rights violation into a search incident to an arrest, supported by probable cause.

Finally, it is difficult to square the result in this case with the medical-marijuana regime that Maryland has now put in place. If a patient has the odor of marijuana on her person or breath because she recently smoked some marijuana that was grown by a state-licensed grower and purchased at state-licensed dispensary at the recommendation of a state-regulated healthcare provider, this opinion establishes that the police have probable cause to arrest and search her. It is small solace that, according to the State, the officers are supposed to allow the patient to go free, as long as she remembered to carry her

identification card from the Maryland Medical Cannabis Commission. *See* Md. Code (1982, 2015 Repl. Vol.), § 13-3313(a)(1) of the Health-General Article (a qualifying patient in possession of a permissible amount of marijuana "may not be subject to arrest").

In summary, I agree with Judge Graeff that Lewis has not preserved his first argument, but I join the rest of her opinion not because I believe that the conclusion is just, but only because I believe that the current case law requires it.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1115

September Term, 2017

_____

RASHERD LEWIS

v.

STATE OF MARYLAND

_____

Graeff,
Nazarian,
Arthur,

JJ.

_____

Dissenting Opinion by Nazarian, J.

_____

Filed:  June 28, 2018

I agree with both of my colleagues that Rasherd Lewis didn't preserve his contention that he had been seized by Officer Curtis before Officer Burch detected an odor of marijuana emanating from his person.[1] I also share Judge Arthur's concerns about the real-life consequences of a holding that police have probable cause to arrest a person, and conduct a full warrantless search incident to that arrest, based solely on that marijuana odor. And I agree with, and join, all but the last analytical step of his concurring opinion. I disagree that *Robinson v. State*, 451 Md. 94 (2017), which addressed probable cause to search a *vehicle* based on the odor of marijuana, compels us to conclude that the mere odor of marijuana provides probable cause to arrest and search an *individual*, and I dissent, respectfully, from my colleagues' decision to affirm the judgment.

**I.**

Before zooming in on the final analytical step, it's worth panning out to view the broader context. Mr. Lewis appeals his conviction for wearing, carrying, or transporting a handgun. The gun was found in a bag he carried as he stood in line at a store called Bag Mart. Officers discovered the gun when they searched him incident to arrest. Everyone agrees: neither the tip "from a source of information" that he had a gun nor the general odor of marijuana in the air at Bag Mart gave rise to probable cause to arrest or search Mr. Lewis for anything. Instead, his arrest was grounded entirely in Officer Burch's testimony that he detected an odor of marijuana emanating from Mr. Lewis's person.

---

[1] The record doesn't distinguish from whence on Mr. Lewis the odor emanated, *see* Graeff Op. at 3, but the precise provenance of the smell doesn't matter for present purposes.

Although they can overlap, probable cause to arrest a person arises differently from probable cause to search him or to search a place. Generally speaking, both require the same "quantum of evidence," *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004), but "[e]ach requires a showing of probabilities as to somewhat different facts and circumstances—a point seldom made explicit in the appellate cases." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.1(b), at 7 (5th ed. 2012). Probable cause to search exists when, in light of the "totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (cleaned up). Probable cause to arrest, on the other hand, arises when "the facts and circumstances" within a law enforcement officer's knowledge are "sufficient to warrant a prudent [police officer] in believing that [the suspects] had committed or [were] committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.") (cleaned up). "This distinction is a critical one, . . . [and] there may be probable cause to search without probable cause to arrest, and vice-versa." 2 LaFave, *Search and Seizure* § 3.1(b) at 12; *see also Butler v. United States*, 102 A.3d 736, 741 (D.C. 2014) (although "the smell of marijuana 'generally' emanating from appellant's vehicle . . . indisputably would allow the police to search the *vehicle*," the court had "reservations" about upholding the driver's *arrest* on that basis alone; but court ultimately held arrest lawful given additional

2

facts that defendant "was the sole occupant of the vehicle" and "the aroma was of *fresh* marijuana") (emphasis added).

The marijuana odor Officer Burch smelled told him nothing about the possibility that Mr. Lewis had committed or was committing a *gun* crime, and the tip fell short of meeting that burden as well. The odor instead bore on whether Mr. Lewis was committing or had committed a different crime, *i.e.*, a marijuana possession crime. At one level, that doesn't matter: once arrested properly for any crime, officers were entitled to search Mr. Lewis incident to that arrest. *Conboy v. State*, 155 Md. App. 353, 364 (2004) ("Once lawfully arrested, police may search the person of the arrestee as well as the area within the control of the arrestee to remove any weapons or evidence that could be concealed or destroyed.") (cleaned up). As Judge Graeff notes, correctly, "[t]he Maryland appellate courts consistently have held that the odor of marijuana provides probable cause to believe marijuana is present." Graeff Op. at 15 (citing *Robinson; Bowling v. State*, 227 Md. App. 460, 469 (2016) and others). And as a general matter, I can't disagree with the statement a few pages later "[t]hat the possession of ten grams of marijuana or less has been decriminalized does not change the [probable cause] analysis." *Id.* at 22 (citing and quoting, in a footnote, *Robinson*).

But I see two problems with extending those statements from *Robinson* to uphold the arrest and search in this case. *First*, the broad probable cause language in *Robinson* arose in the context of vehicle searches, and flows from the vehicle search doctrine that doesn't apply identically to individuals. *Compare Carroll v. United States*, 267 U.S. 132, 153 (1925); *State v. Johnson*, __ Md. __, No. 22, Sept. Term, 2017, slip op. at 12–18 (filed

3

Apr. 20, 2018). *Second*, I am having trouble reconciling my colleagues' reading of *Robinson* with the two opinions in *Norman v. State*, 452 Md. 373 (2017), in which the odor of marijuana emanating from a vehicle was held insufficient by itself to justify a *Terry*[2] frisk—a less invasive law enforcement inquiry—of a passenger. Those cases make sense together only if we recognize the Constitutional distinction between law enforcement investigations of vehicles and law enforcement interactions with individuals.

## II.

The Fourth Amendment protects people from "unreasonable searches and seizures," and seeks to protect "the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government." *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 613–14 (1989). My colleagues ably have analyzed the landscape up to *Robinson*, so I can skip to that point: they ground their conclusion that the arrest and ensuing search were reasonable, and the fruits of the search admissible, on *Robinson*'s holding that "a law enforcement officer has probable cause *to search a vehicle* where the law enforcement officer detects an odor of marijuana emanating from the vehicle." *Robinson*, 451 Md. at 99 (emphasis added). *Robinson* encompassed three separate defendants—Messrs. Robinson, Williams, and Spriggs—and three separate searches. All three involved more than *an* odor of marijuana—all three officers smelled "fresh marijuana" to a degree they described as "overwhelming," 451 Md. at 100 (Robinson), or "strong," *id*. at 102 (Williams), 105 (Spriggs)—and the questions presented in the petitions

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

4

for writ of *certiorari*, as the Court granted them, described the marijuana odor in the same high-octane terms. But I recognize that the Court expressly declined to "cabi[n its] holding to the requirement that the odor must be strong or overwhelming," and concluded instead that "the odor of marijuana in any amount provides probable cause to search a vehicle." *Id.* at 130.

Even so, the probable cause supporting the vehicle searches in *Robinson* arose differently than the probable cause to arrest here. In each of the three searches in *Robinson*, the officer's attention was drawn to the vehicles initially by independently suspicious circumstances,[3] and the officer didn't detect a marijuana odor until he approached the vehicle to investigate. The *Robinson* defendants' encounters with the police did not occur solely, or even initially, because officers detected marijuana coming from them or their cars—the odor was at least the second sign, if not the third or fourth, that criminal activity might be afoot.

From there, all three *Robinson* defendants took the position that, in light of the General Assembly's then-recent decriminalization of small amounts of marijuana, "the odor of marijuana alone does not constitute probable cause that a vehicle contains more than ten grams of marijuana because the odor of marijuana indicates only its presence, not

---

[3] Officers noticed Mr. Robinson leaning against a car all by itself on one side of the road. He "made a movement toward his waistband" when the officers approached him and told the officers that there was marijuana in the car. 451 Md. at 100. Mr. Williams was sitting in a car stopped in front of a stop sign and "replied affirmatively" when the officer asked him whether he smoked marijuana. *Id.* at 102. Mr. Spriggs was sitting in a parked car with his feet outside the vehicle in a lot in front of an abandoned building and walked toward the back of his vehicle as the officer approached him. *Id.* at 104–05.

its amount." *Id*. at 107. In analyzing, and ultimately rejecting that argument, the Court relied on the *Carroll* doctrine, "the *automobile* exception to the warrant requirement." *Id*. at 111 (citing *Carroll*, 267 U.S. at 153) (emphasis added). The premise underlying *Carroll* is that "with probable cause to believe that a vehicle contains contraband, a law enforcement officer may search a vehicle without a warrant, because vehicles can be quickly moved from one jurisdiction to another, thus making it impracticable to obtain a warrant." *Robinson*, 451 Md. at 111. From there, all of the cases on which the Court relied involved the search of a vehicle—quite reasonably because, again, *Robinson* involved three vehicle searches.

*Robinson* fairly applies the general principle that probable cause can arise from indicia of a crime or contraband, and holds that the odor of marijuana coming out of a car indicates that contraband or criminal activity are present *in the car*. But cars are confined spaces, and I have difficulty imagining how marijuana odors might emanate legally from cars. Even people authorized under Maryland's new medical marijuana laws to use marijuana can't smoke it in a car or drive under the influence. *See* MD. CODE ANN., (1982, 2015 Repl. Vol.) HEALTH-GEN. § 13-3314(a)(2); *but see Norman v. State*, 452 Md. 373, 429 ("Indeed, the officer [who smells marijuana emanating from a vehicle] cannot assume that the occupants are engaged in criminal activity at all . . .") (Adkins, J., concurring). And again, that odor serves in *Robinson* as a basis for probable cause to search a vehicle, not to arrest and search any individual.

It overreads *Robinson*, then, to say that it stands for the proposition that an odor of marijuana emanating from a *person* indicates that contraband is present or that a crime has

6

been committed. Even recognizing, as *Robinson* says, that "[d]ecriminalization is not the same as legalization[,] . . . possession of marijuana in **any** amount remains illegal in Maryland," and that in a car "the odor of marijuana remains evidence of a crime,"451 Md. at 124–25, 133 (bold in original), there are plenty of non-criminal ways a *person* not in a car might come to smell of marijuana. *See*, *e.g*., Arthur Op. at 8–9. And even if one were to assume that the smell of marijuana from a person's breath or clothing is evidence that the person recently smoked marijuana without legal authorization, I agree with Judge Arthur that the odor alone says little about whether the person presently is committing a possession crime.

This case doesn't involve a vehicle at all. Officer Burch (who, with Officer Curtis, was acting on the confidential tip) testified that upon entering the "small," "crowded" store, Graeff Op. at 3, he smelled an odor of marijuana. He testified that there were other customers in front of Mr. Lewis and an odor of marijuana in the air generally, but nevertheless that he "smelled an odor of marijuana emitting from [Mr. Lewis's] person" when he was "literally right in front of" Mr. Lewis. To the extent the circuit court credited this testimony as a matter of fact, I agree with Judge Arthur that we must do the same, "[h]owever dubious or convenient" it might seem. Arthur Op. at 9. I disagree, however, that this finding requires us, under *Robinson*, to find that Officer Burch had probable cause to arrest and search Mr. Lewis based on that odor alone.

### III.

I am also struggling to reconcile my colleagues' reading of *Robinson* with the principles underlying the two opinions in *Norman v. State*, 453 Md. 373 (2017), that

combined to reverse our Court's decision in that case.[4] *Norman* was decided after *Robinson* and asked a different question—the defendant was a passenger in a vehicle stopped by officers for an inoperable tail light, and the issue was whether officers had reasonable articulable suspicion to frisk him for officer safety after the officers smelled marijuana emanating from the car. We affirmed the circuit court's decision not to suppress the drugs that officers found during the frisk. *Norman*, 2016 WL 4261800, at *5. We reasoned that the probable cause to search the vehicle, based on the marijuana odor, combined with other circumstances gave rise to legitimate safety concerns, which justified a *Terry* frisk. *Id.*

In a pair of opinions—two judges joined each, and a fifth concurred in the judgment—the Court of Appeals reversed. *Norman*, 452 Md. at 428–31. And even with its differences, *Norman* answers a relevant question in a similar context. In the first opinion, the judges concluded that the odor of marijuana emanating from the vehicle did not justify a frisk of everyone in it:

> It is correct that, in <u>Robinson</u>, [451 Md.] at 131–32, this Court concluded that law enforcement officers are unable to differentiate between a criminal amount (ten grams or more) and a non-criminal amount (less than ten grams) of marijuana based on the odor of marijuana. Norman takes out of context the significance of this Court's statement that the odor of marijuana may be indicative of possession of less than ten grams of marijuana. This Court made the statement in the context of holding that an odor of marijuana gives rise to probable cause to search a vehicle, and for purposes of probable cause to search a vehicle there is no distinction between the presence of more than ten grams of marijuana and less than ten grams of marijuana in the vehicle.
>
> ***

---

[4] *Norman v. State*, No. 1408, Sept. Term 2015, 2016 WL 4261800 (filed Aug. 11, 2016).

> Furthermore, at the risk of stating the obvious, *Robinson in no way addressed whether the odor of marijuana gives rise to reasonable articulable suspicion to frisk*.
>
> ***
>
> At the same time, however, <u>Robinson</u> does not stand for the proposition that *the odor of marijuana alone emanating from a vehicle gives rise to reasonable articulable suspicion that every occupant of a vehicle is armed and dangerous*. In contrast to Norman's reading of <u>Robinson</u>, the State expands <u>Robinson</u>'s holding to argue that it enables a law enforcement officer to conclude that, based solely on the odor of marijuana emanating from a vehicle, it is reasonable to believe that all of the vehicle's occupants are armed and dangerous and thus subject to frisk. Simply put, *the only issue in <u>Robinson</u> was whether an odor of marijuana emanating from a vehicle produces probable cause to search the vehicle*. No frisks or searches of persons were at issue in *Robinson, and nowhere in <u>Robinson</u> did this Court imply, one way or the other, whether a frisk of a person would be permissible based on an odor of marijuana alone emanating from a vehicle*.

452 Md. at 409–11 (emphasis added).

To be sure, an officer determining whether to frisk someone is undertaking a different analysis—do I have reasonable articulable suspicion to believe this person might be armed or dangerous?—than an officer determining whether there is probable cause to arrest and search. But it strikes me as important that, as these two members of the Court of Appeals (including the author of *Robinson*) examined that question, they distinguished the conclusions that a marijuana smell allows officers to draw about the *vehicle* from the conclusions they can draw about the *individuals* inside the vehicle. The officers needed individualized suspicion before they could pat down the passenger, they said—a less invasive investigation than an arrest and a search incident to arrest. *Norman*, 452 Md. at 388 ("A frisk is different from a search of a person. Whereas a search has the broad purpose

9

of discovering incriminating evidence, a frisk has the limited purpose of discovering weapons.") (cleaned up).

If the odor of marijuana from a car (driving at night in a common drug corridor) didn't provide the individualized suspicion of dangerous criminal behavior necessary to justify a pat-down of the passengers, I don't see how that same odor (by itself) can create probable cause to arrest and search an individual. And even if the odor of marijuana indicates the presence of contraband in the car, the first *Norman* opinion's distinction makes sense only if there is a Constitutional distinction between officers' authority to engage individuals and vehicles. Which, in my view, there is.

Indeed, the second opinion in *Norman* recognizes such a distinction in so many words. While declining to infer the presence of *weapons* from the odor of marijuana, these two judges also declined to infer drug distribution crimes and, importantly, stated that officers cannot assume the presence of criminal activity from the odor of marijuana in a car:

> *It is not reasonable for a police officer to believe that a passenger in a vehicle that smells of marijuana is selling drugs.* Unlike *Maryland v. Pringle*, 540 U.S. 366, 373 (2003) [], in which the U.S. Supreme Court reasoned that the discovery of large amounts of cash and cocaine in a vehicle suggested drug dealing, a police officer who smells marijuana coming from a car has not yet uncovered any evidence of drug dealing. *Indeed, the officer cannot assume that the occupants are engaged in any criminal activity at all*—in Maryland, the possession of less than ten grams of marijuana is no longer a criminal offense. Md. Code (2014, 2012 Repl. Vol., 2016 Supp.), § 5-601.1(b) of the Criminal Law Article. In light of this legislation, the association between marijuana and guns becomes even more attenuated, as non-criminal recreational users are far less likely to be armed and dangerous.

10

Our recent decision in *Robinson v. State*, 451 Md. 94 (2017) [], in which we held that the smell of marijuana gives police officers probable cause to search a vehicle, does not weaken this analysis. To justify a vehicle search under the Fourth Amendment, a police officer must have probable cause to believe evidence of crime or contraband is present. *Florida v. Harris*, 568 U.S. 237 (2013)[] (citation omitted). In *Robinson*, we reasoned that although possession of a small amount of marijuana is no longer a crime, it is still illegal to possess, and therefore still contraband. *Robinson*, 451 Md. at 125 []. Thus, its smell gives rise to probable cause to search the automobile to recover the illegal substance. *Id.* at 130–31 []. But to conduct a *Terry* frisk, a police officer must have reason to believe that an individual has a weapon—not just contraband. [citations omitted]

Certainly, if a police officer uncovers enough evidence of drug possession to give her probable cause to arrest the vehicle's occupants, such as in *Pringle*, the officer could then conduct a search of each individual incident to the arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973) []. But without probable cause to arrest, reasonable suspicion of drug possession **alone** does not justify a *Terry* frisk.

*Norman*, 452 Md. at 429–30 (italics added, bold in original). And although these judges recognized that further evidence of drug possession would give rise to probable cause to arrest and search the occupants, there is no suggestion in that opinion (or in the first opinion) that the mere smell of marijuana would satisfy that burden.

Based on today's decision, though, the officers in *Norman* may well have made a mistake. At the very least, the marijuana odor coming from the car allowed them to search the vehicle and arrest and search the driver.[5] From there, "upon detecting an odor of

---

[5] I assume for present purposes that a majority of the Court of Appeals would agree with the first opinion in *Norman* that *Pringle* did not vitiate *State v. Wallace*, 372 Md. 137

11

marijuana from a vehicle, a law enforcement officer may ask all of the vehicle's occupants to exit the vehicle; . . . detain the vehicle's occupants for a reasonable period of time to accomplish the search of the vehicle; and search the vehicle for contraband and/or evidence of a crime." 452 Md. at 425. Any passenger who smelled of marijuana could, at that point, also have been arrested and searched. So rather than frisking Mr. Norman for officer safety—a less invasive interaction that was found to violate his Constitutional rights—they should have ordered him out of the car and, after detecting the smell of marijuana on his person, arrested him and searched him head to toe. Under the ruling we announce today, the more invasive, less tailored intrusion—an arrest and full search—passes constitutional muster while the less invasive, more narrowly tailored intrusion—a frisk—doesn't. That tells me that *Robinson*'s notion of probable cause to search a vehicle based on the odor of marijuana is not meant to stretch so far.

## IV.

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891). I recognize that law enforcement must have "the ability to find and seize contraband and evidence of a crime." *Wyoming v. Houghton*, 526 U.S. 295, 305 (1999). Judge Arthur is right, though,

---

(2002), and therefore that an odor emanating from a vehicle generally does not, without more, authorize a search of each individual passenger. The second opinion doesn't discuss or cite *Wallace*, but the opinion wouldn't make sense if it disagreed on this point.

12

that the decision today will result in injustice, Arthur Op. at 8, and it's more than that: the result of today's decision is that the mere odor of marijuana will justify an arrest and head-to-toe, even body cavity, search of a person and whatever he or she might be carrying. *See, e.g.*, *Williams v. State*, 231 Md. App. 156 (2016) (visual body cavity search of defendant following arrest during a traffic stop was reasonable).

And it's easy to foresee the ways, and how easily, today's decision could lead to unintended consequences. There is no way to challenge or verify what the officer smelled, no way to test whether a person actually smelled of marijuana, no way to memorialize the smell that the officer smelled, and no way to control for the fully legal and otherwise non-criminal or second-hand ways someone could come to smell like marijuana. Or tobacco. Or clove cigarettes. Or vape juice. Or incense. Or hair oil. Or body odor. Or other ambiguous odors that might be mistaken for marijuana or the possibility of marijuana. And the officer need not even be right about what he claims to smell. So long as the officer is acting in good faith (or can't be proven to be acting in bad faith), the arrest will survive scrutiny and the fruits of the search will be admissible. *See*, *e.g.*, *Davis v. United States*, 564 U.S. 229 (2011) (exclusionary rule doesn't apply when police conduct a search in good faith reliance on binding appellate precedent); *McCain v. State*, 194 Md. App. 252 (2010) (good faith exception to the exclusionary rule precluded suppression of evidence obtained from warrantless search).

To permit an officer to stop, arrest, and search a citizen solely because of the odor of marijuana without more not only "subject[s] [him or her] to the indignity of an arrest and a search incident to an arrest," Arthur Op. at 8, but it "give[s] [police officers] reason

13

to target pedestrians in an arbitrary manner," and lets us "risk treating members of our communities as second-class citizens." *See Utah v. Strieff*, 579 U.S. ___, 136 S. Ct. 2056, 2069 (2016) (Sotomayor, J., dissenting). And although "anyone's dignity can be violated in this manner," *id.*, 136 S. Ct. at 2070, we know that in Maryland, Black people are three times more likely to be arrested for marijuana possession than white people, despite comparable usage rates. *See* AMERICAN CIVIL LIBERTIES UNION, *The War on Marijuana in Black and White: Billions of Dollars Wasted on Racially Biased Arrests*, 1, 155 (June 2013), https://www.aclu.org/criminal-law-reform/war-marijuana-black-and-white-report (last visited May 1, 2018).

If individualized suspicion is required before "[e]ven a limited search of the outer clothing . . . [which] constitutes a severe, though brief, intrusion upon cherished personal security," *Terry*, 392 U.S. at 24–25, it is not unreasonable to require an officer to have something more than the odor of marijuana coming from a person to form probable cause to arrest and conduct a full-blown search of that person. *Robinson* and *Norman*, among others, have already, and correctly, recognized that officers can't fairly be asked to distinguish criminal from sub-criminal amounts of marijuana based on its odor. But I would resolve this practical challenge in favor of requiring something more than the odor of marijuana to support a finding of probable cause, just as the odor wasn't the sole anchor of probable cause in *Robinson*. In addition to the usual range of traffic offenses and other crimes, officers could develop probable cause to arrest for possession in all sorts of other ways: from particular odors, such as fresh or raw marijuana, that independently indicate possession in a larger amount, *People v. Zuniga*, 372 P.3d 1052 (Colo. 2016); from visible

smoking material or paraphernalia, *Barrett v. State*, 234 Md. App. 653, 667–68 (2017), *cert. denied*, 457 Md. 401 (2018); from the individual's evasive behavior, *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004); or from other circumstances that, along with an odor of marijuana emanating from a person, combine to give officers reason to believe that a crime is or has recently been committed.

As I read *Robinson* and the cases leading up to it, the Fourth Amendment and Maryland law require something more than the mere odor of marijuana before officers have probable cause to arrest and search a person. Because the officers here had nothing beyond the odor, I would reverse the judgment of the circuit court.