*Rasherd Lewis v. State of Maryland*, No. 44, September Term, 2019

**CRIMINAL PROCEDURE — ODOR OF MARIJUANA — PROBABLE CAUSE — SEARCH INCIDENT TO LAWFUL ARREST EXCEPTION — DECRIMINALIZATION OF LESS THAN TEN GRAMS OF MARIJUANA —** The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. For a warrantless arrest to be reasonable, there must be probable cause to believe that the arrestee committed a felony or was committing a felony or misdemeanor in the presence of a law enforcement officer. Possession of less than ten grams of marijuana is neither a felony nor a misdemeanor, but rather a civil offense. In order to lawfully arrest someone for possession of marijuana, the law enforcement officer must have probable cause to believe the arrestee possesses a criminal amount of marijuana, i.e., ten grams or more. A law enforcement officer cannot determine by the odor of marijuana alone the quantity of marijuana, if any, someone possesses. Therefore, the mere odor of marijuana does not create probable cause to believe an arrestee possesses a criminal amount of that substance.

Circuit Court for Baltimore City
Case No. 417048006
Argued: January 9, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 44

September Term, 2019

_____

RASHERD LEWIS

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: July 27, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

In 2014, the General Assembly decriminalized the possession of less than ten grams of marijuana, making such possession a civil offense. Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2014 Supp.), § 5-601(c)(2). Since then, this Court has issued three opinions in three cases addressing the Fourth Amendment implications of such decriminalization: *Robinson v. State*, 451 Md. 94 (2017), *Norman v. State*, 452 Md. 373, *cert. denied*, 138 S. Ct. 174 (2017), and *Pacheco v. State*, 465 Md. 311 (2019). All three cases involved police officers' actions in response to their knowledge or suspicion of either the presence or odor of marijuana. The outcome of each, however, was dictated by the underlying facts and consideration of the pertinent exception(s) to the Fourth Amendment's warrant requirement. *See Robinson*, 451 Md. at 125–35 (automobile exception); *Norman*, 452 Md. at 411–13 (stop and frisk exception); *Pacheco*, 465 Md. at 321–23 (search incident to arrest and automobile exceptions).

We here consider, and for the reasons that follow hold, that the odor of marijuana, without more, does not provide law enforcement officers with the requisite probable cause to arrest and perform a warrantless search of that person incident to the arrest.

## I.

## Facts and Procedural History

Rasherd Lewis, Petitioner, was convicted in the Circuit Court for Baltimore City of wearing, carrying, or transporting a handgun upon the court's finding him guilty of that charge based on an agreed statement of facts. That proceeding followed a hearing on Petitioner's motion to suppress a handgun, marijuana, cash, and plastic baggies that the

police seized during a search of him at a convenience store in downtown Baltimore City on February 1, 2017.

*The Suppression Hearing*

Baltimore City Police Officer David Burch, Jr., was the sole witness to testify at the suppression hearing, after being accepted as an expert in the identification and packaging of marijuana. The court, having credited the testimony of Officer Burch, denied Petitioner's motion to suppress the items seized during the search. We summarize Officer Burch's testimony, viewed in the light most favorable to the prevailing party, here, the State.

On February 1, 2017, Officer Burch received a tip about a potentially armed individual in the 400 block of West Saratoga Street in Baltimore City. The tipster was not a confidential informant but someone whom Officer Burch described as having provided reliable information to him for "a little less than a month" before the incident at issue in the present case. Officer Burch conveyed the tip and a description of the individual to CitiWatch, which monitors Baltimore City's surveillance cameras. The CitiWatch Operator reported back that an individual matching the description given by Officer Burch—later identified as Petitioner—was observed on a surveillance camera entering the Bag Mart, a convenience store located at 401 West Saratoga Street. Officer Burch was familiar with that store, as it was in a "high crime area" and known to him as an "open air drug market" where marijuana was often distributed both inside and in front of the store. He previously made controlled dangerous substance and handgun arrests at the location.

2

Officer Burch and five other officers responded to the Bag Mart. The store is small. As he and the other officers were entering, Officer Burch saw that the store was "fairly crowded" and smelled of the odor of marijuana. Officer Burch spotted Petitioner move from a position near the cash register and follow others who were heading toward the exit. Petitioner had a red bag strapped across his chest, was walking normally, and appeared to be calm.

As Petitioner passed "literally right in front of" Officer Burch, the officer smelled "the odor of marijuana emitting from [Petitioner's] person." By that time, the officers had asked the other patrons to exit the store, leaving only the store's owner, Petitioner, and the six police officers.

Officer Burch testified that he reached out and "stopped" Petitioner based on "the odor of marijuana and the information [he] received to further investigate."[1] Officer Burch described the stop. While standing "face to face" with Petitioner, he used his right hand to grab Petitioner's right hand and his left hand to grab Petitioner's left shoulder. The other five officers surrounded Petitioner, with Officer Curtis situated directly behind Petitioner.

Officers Burch and Curtis were wearing department-issued body worn cameras. Footage from each of the cameras was entered into evidence at the suppression hearing. Officer Burch testified that he turned on his camera when he came into direct contact with Petitioner. Officer Burch acknowledged, however, that for about thirty seconds the camera

---

[1] As we shall see, the suppression court found that the tip did not supply sufficient reliability to support a lawful *Terry* stop of Petitioner.

was "buffering." As best we can discern from the record, during that time, Officer Burch directed Petitioner to raise his hands and Petitioner complied. When Petitioner began to lower his hands, Officer Curtis, at Officer Burch's direction, grabbed one then presumably the other of Petitioner's arms and handcuffed Petitioner. Officer Curtis's camera recorded Officer Burch advising Petitioner to calm down as Officer Curtis handcuffed him.

Once Petitioner was handcuffed, Officer Burch undertook a full search of Petitioner. He first searched the red bag and found a handgun inside. Then, as he searched Petitioner's pockets and waistband, Petitioner advised that he was carrying a small amount of marijuana. Officer Burch found that quantity of marijuana in a sealed, one-inch plastic baggie in one of Petitioner's pockets.[2]

Petitioner, through counsel, advanced two theories to support his motion to suppress the fruits of the search. He argued first that, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), the police did not possess the requisite reasonable suspicion to "stop" Petitioner at the outset of the encounter.[3] Independent of that argument, Petitioner contended that the full search of Petitioner and the bag he carried was unlawful because at the time the search was undertaken, the police lacked probable cause to believe he had committed a felony or was committing a felony or misdemeanor in their presence.

---

[2] The search also disclosed a number of empty plastic baggies and $367.

[3] Law enforcement officers may conduct "an investigatory stop or detention" when the officers have "reasonable suspicion that a person has committed or is about to commit a crime[,]" commonly known as a "*Terry* stop." *Bailey v. State*, 412 Md. 349, 363 (2010) (quoting *Swift v. State*, 393 Md. 139, 149–51 (2006)).

Specific to the probable cause argument, Petitioner argued that the search incident to arrest exception—the justification propounded by the State—did not justify a full-scale search because no probable cause existed to arrest him. Petitioner noted that someone in possession of less than ten grams of marijuana may be issued a civil citation but cannot be arrested, therefore no lawful arrest occurred. The State responded that the odor of marijuana provided Officer Burch with probable cause to arrest and search Petitioner because marijuana in any amount is contraband, and although possession of less than ten grams of marijuana was decriminalized, "it was never the legislature's intention to reclassify marijuana as not being contraband."

The suppression court determined that the tip that caused Officer Burch and his five fellow officers to respond to the Bag Mart lacked sufficient reliability to justify the initial stop of Petitioner. In making that determination, the court quoted *Florida v. J.L.*, 529 U.S. 266, 272 (2000), which states that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Given the lack of sufficient indicia of reliability, the court granted Petitioner's motion to suppress evidence of the tip.

The suppression court credited Officer Burch's testimony that he smelled the odor of marijuana on Petitioner's breath and body as soon as he and Petitioner were "face to face." Based on that finding, the court ruled that the odor of marijuana gave police probable cause to arrest Petitioner and, incident to such arrest, conduct a full search of his person. In making that ruling, the court relied on *Robinson v. State*, 451 Md. 94 (2017), which we

5

noted at the outset of this opinion involved the automobile exception, not the search incident to arrest exception, to the Fourth Amendment's warrant requirement.

Extrapolating upon the reasoning of *Robinson*, the suppression court concluded: "[I]t would appear that the odor of marijuana emanating from a person provides probable cause to believe that that person contains evidence of a crime[; consequently,] a police officer may search that person under such circumstances." Based on that ruling, the court denied the defense's motion to suppress the handgun found during the search of Petitioner.[4]

*Subsequent Procedural History*

Petitioner pleaded not guilty on an agreed statement of facts to the charge of wearing, carrying, or transporting a handgun. After the State's presentation of the agreed-upon facts, the circuit court found Petitioner guilty of the handgun charge and sentenced him to three years' incarceration with all but ninety days suspended and three years' supervised probation.

*The Appeal*

On appeal to the Court of Special Appeals, the three-judge panel, in a fractured opinion, affirmed the decision of the circuit court. *Lewis v. State*, 237 Md. App. 661 (2018). Petitioner advanced two theories supporting the claim that he was unlawfully seized and subjected to a search incident to arrest. Only one of those contentions was raised and argued at the suppression hearing and therefore was properly before the Court of

---

[4] The court did not suppress the non-criminal amount of marijuana found during the search of Petitioner.

6

Special Appeals and is properly before us now. The other argument, raised for the first time on appeal, was waived by omission at the suppression hearing.

*A Contention Unpreserved for Appellate Review*

Petitioner's first of two contentions on appeal to the Court of Special Appeals was that the police officers had no lawful basis to seize him at the outset of the encounter in the Bag Mart; consequently, the handgun found during the search following that unlawful seizure should have been suppressed as fruit of the poisonous tree. *See Cox v. State*, 421 Md. 630, 651 (2011) ("[T]he fruit of the poisonous tree doctrine excludes direct and indirect evidence that is a product of police conduct in violation of the Fourth Amendment.") (quoting *Myers v. State*, 395 Md. 261, 291 (2006)). Petitioner advances the same contention in the second question he presents to us.

The Court of Special Appeals explained why this contention was not preserved for appellate review:

> A review of the body-camera footage does not reflect where Officer Burch was when Officer Curtis initially touched appellant's arm. It does reflect, however, that within one second or less, Officer Burch was in front of appellant telling him to put his hands up. Although appellant hinges his argument on appeal on this sequence of events during a fast moving situation, he never raised this argument below or suggested that the timing of Officer Curtis' actions had any bearing at all on the suppression issue. And the circuit court did not address the significance or timing of Officer Curtis' action in grabbing appellant because the issue was not raised at the suppression hearing. Under these circumstances, the issue is not preserved for this Court's review. *See* Maryland Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issues unless it plainly appears by the record to have been raised in or decided by the trial court."); *Ray v. State*, 435 Md. 1, 19, 76 A.3d 1143 (2013) (where a defendant advances one theory of suppression pursuant to Maryland Rule 4-252, but fails to argue an additional theory that it later asserts on appeal, the defendant has "waived the

7

right to have that claim litigated on direct appeal."). Accordingly, we will not address this contention.

*Lewis*, 237 Md. App. at 675 (footnotes omitted).

We agree with the Court of Special Appeals that Petitioner failed to preserve his contention that Officer Curtis had no lawful basis to seize Petitioner before Officer Burch smelled marijuana on his person, rendering the handgun found during the subsequent search inadmissible as the poisonous fruit of the unlawful seizure. There is, moreover, no need to exercise our discretion to consider that unpreserved contention, as Petitioner asks us to do,[5] because Petitioner ultimately prevails on the first question he presents. We address that argument below.

*Probable Cause to Conduct a Full-Scale Search of Petitioner?*

Petitioner argues that the police officers lacked probable cause to conduct a warrantless search of him based solely on Officer Burch's having smelled the odor of marijuana emanating from either or both Petitioner's breath or body. A majority of the Court of Special Appeals' three-judge panel agreed with the circuit court's ruling at the

---

[5] The questions as presented by Petitioner are:

1) Did the Court of Special Appeals err in concluding that the odor of marijuana on a person, without more, constitutes probable cause to arrest?

2) When a majority of a Court of Special Appeals panel concludes that its decision "will result in injustice," should the court exercise its discretion under Maryland Rule 8-131 and address a constitutional question, which the parties fully briefed in the absence of a preservation challenge, about whether incontrovertible body-camera evidence demonstrates the "seizure" of a person without probable cause?

suppression hearing that *Robinson* stands for the proposition that, because marijuana remains contraband, the odor of marijuana provides law enforcement officers with probable cause to arrest a person, and therefore a search incident thereto is reasonable. *Lewis*, 237 Md. App. at 683 (holding "that the odor of marijuana, if localized to a particular person, provides probable cause to arrest that person for the crime of possession of marijuana."); *id.* at 690 (Arthur, J., concurring) ("Therefore, if 'the odor of marijuana remains evidence of a crime' in the context of a vehicle search, as *Robinson* said . . . , it presumably 'remains evidence of a crime' in the context of a warrantless arrest.").

Conversely, the dissenting opinion explained that "*Robinson* fairly applies the general principle that probable cause can arise from indicia of a crime or contraband, and holds that the odor of marijuana coming out of a car indicates that contraband or criminal activity are present *in the car*." *Id.* at 697 (Nazarian, J., dissenting) (emphasis in original). Because, however, there are plausible innocuous explanations for why someone may smell of marijuana that do not involve a vehicle, the dissent asserted that *Robinson* cannot be read as "stand[ing] for the proposition that an odor of marijuana emanating from a *person* indicates that contraband is present or that a crime has been committed." *Id.* (emphasis in original).

For the reasons that follow, we agree with Petitioner that *Robinson* does not control the outcome of this case. Instead, it is *Pacheco*, decided after the Court of Special Appeals issued its opinion in the case at bar, that dictates the outcome here. We hold that more than the odor of marijuana is required for probable cause to arrest a person and conduct a search

9

incident thereto. We therefore further hold that Petitioner was entitled to suppression of the handgun and other items seized during the search because Officer Burch, at the time he undertook the search of Petitioner that produced the seized items, did not have probable cause to believe that Petitioner had committed a felony or was committing a felony or misdemeanor.

## II.

## Standard of Review

When reviewing a circuit court's denial of a motion to suppress evidence, we interpret the record in the light most favorable to the prevailing party and accept the factual findings unless they are clearly erroneous. *Norman*, 452 Md. at 386. We review *de novo* the "court's application of the law to its findings of fact." *Id.* "When a party raises a constitutional challenge to a search or seizure, this Court renders an 'independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case.'" *Pacheco*, 465 Md. at 319 (quoting *Grant v. State*, 449 Md. 1, 15 (2016)).

## III.

## Discussion

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized." U.S. CONST. amend. IV; *see also* MD. DECL. OF RIGHTS art. 26 ("That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive"). The touchstone of whether a warrantless search or seizure withstands Fourth Amendment scrutiny is reasonableness. *See Maryland v. King*, 569 U.S. 435, 447 (2013) ("[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'") (citation omitted); *Pacheco*, 465 Md. at 320 ("It is well settled that the Fourth Amendment . . . prohibits 'unreasonable' searches and seizures.").

"What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985) (citation omitted). "[S]ubject only to a few specifically established and well-delineated exceptions, a warrantless search or seizure that infringes upon the protected interests of an individual is presumptively unreasonable." *Grant*, 449 Md. at 16–17 (footnote omitted); *see also Katz v. United States*, 389 U.S. 347, 357 (1967). "Whether a particular warrantless action on the part of the police is reasonable under the Fourth Amendment depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pacheco*, 465 Md. at 321 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (internal quotations omitted)).

Pacheco *and the Odor of Marijuana*

The relevant exception to the warrant requirement in the present case is the search incident to arrest exception set forth in *Chimel v. California*, 395 U.S. 752 (1969). This Court recently discussed that exception as well as the automobile exception announced in *Carroll v. United States*, 267 U.S. 132 (1925), in *Pacheco.*

In *Pacheco*, two police officers noticed a "suspicious vehicle" occupied by Michael Pacheco parked behind a laundromat. 465 Md. at 317. The officers approached the vehicle and, as they drew near, they smelled the odor of marijuana and observed a marijuana cigarette in the center console. *Id.* at 318. One of the officers requested that Mr. Pacheco give him the "joint," which the officer later testified he immediately knew weighed less than ten grams. Mr. Pacheco was ordered out of the vehicle. The officers searched him and recovered cocaine from Mr. Pacheco's pocket. They then searched the vehicle and found marijuana stems and rolling papers. Mr. Pacheco was given a civil citation for possession of less than ten grams of marijuana and charged with possession of cocaine with intent to distribute. *Id.*

Mr. Pacheco filed a motion to suppress the cocaine. *Id.* He argued that the police officers lacked probable cause to conduct the warrantless search of both his person and his vehicle because there was no reason to suspect he possessed ten grams or more of marijuana. The State responded that the odor of marijuana provided the officers with probable cause to search both Mr. Pacheco and the vehicle. *Id.* The circuit court agreed with the State despite Mr. Pacheco's not having possessed a criminal amount of marijuana;

12

the Court of Special Appeals affirmed.  *Id.* at 319.  On further appeal, this Court reversed

and held that the search of Mr. Pacheco's person was unreasonable.  *Id.* at 333.

The circumstances in *Pacheco* gave rise to two exceptions to the warrant

requirement, the automobile exception and the search incident to arrest exception.  Under

the automobile exception, "*Carroll* [*v. United States*, 267 U.S. 132 (1925),] and its progeny

authorize the warrantless search of a vehicle if, at the time of the search, the police have

developed 'probable cause to believe the vehicle contains contraband or evidence of a

crime.'"  *Id.* at 321 (quoting *State v. Johnson*, 458 Md. 519, 533 (2018)).  The justifications

for the automobile exception are grounded in the mobility of automobiles as well as the

reduced expectations of privacy harbored therein.[6]  *Id.* at 321–22 (citing *California v.*

*Carney*, 471 U.S. 386, 391 (1985)).  Given those justifications, the scope of an automobile

search cannot extend beyond the automobile itself or else "the core Fourth Amendment

protection afforded to" places where privacy expectations are heightened would be

undervalued and the exception would be "untether[ed] . . . from the justifications

underlying it."  *Id.* at 322 (quoting *Collins v. Virginia*, — U.S. — , 138 S. Ct. 1663, 1671

(2018) (internal quotations omitted)).

The prerequisite to a lawful search of a person incident to arrest is that the police

have probable cause to believe the person subject to arrest has committed a felony or is

---

[6] Although typically described as the automobile exception to the Fourth Amendment warrant requirement, the *Carroll* exception also applies to searches of other vehicles.  *California v. Carney*, 471 U.S. 386, 393 n.2 (1985) ("With few exceptions, the courts have not hesitated to apply the vehicle exception to vehicles other than automobiles.").

committing a felony or misdemeanor in the presence of the police.  *Pacheco*, 465 Md. at

323 (citing *Maryland v. Pringle*, 540 U.S. 366, 369–70 (2003)).  "Because the search is

premised on probable cause to make the arrest, the first question to be considered whenever

such a search has been conducted is whether the police had the requisite probable cause

*before* conducting the search."  *Id.* (citing *Donaldson v. State*, 416 Md. 467, 481 (2010)).

The justifications underpinning the search incident to arrest exception include the

confiscation of weapons potentially used to resist arrest, escape custody, or endanger police

officers' safety, and the seizure of evidence "to prevent its concealment or destruction."

*Riley v. California*, 573 U.S. 373, 383, 134 S. Ct. 2473, 2483 (2014) (internal quotation

omitted); *Chimel*, 395 U.S. at 762–63 ("When an arrest is made, it is reasonable for the

arresting officer to search the person arrested in order to remove any weapons . . . [and]

any evidence on the arrestee's person in order to prevent its concealment or destruction.").

*Probable Cause Requirements for the Automobile Exception and the Search Incident to Arrest Exception*

Probable cause is the prerequisite to both a search under the automobile exception

and the search incident to arrest exception.

> [T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . . [P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.
> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.

*Pringle*, 540 U.S. at 370–71 (internal citations and quotations omitted).

14

When analyzing whether probable cause for a warrantless search or seizure existed in a given scenario, we must look to "[t]he authorization for and permitted scope of the search at issue" in relation "to the justification(s) for it." *Pacheco*, 465 Md. at 324. In *Pacheco*, it was at the "justification(s)" stage of the analysis that we noted that probable cause for the automobile exception and the search incident to arrest exception diverge. "Although the probable cause determination for each of these exceptions requires the same 'quantum of evidence,' '[e]ach requires a showing of probabilities as to somewhat different facts and circumstances.'" *Id.* at 324–25 (quoting 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.1(b), at 7 (5th ed. 2012)); *see also State v. Funkhouser*, 140 Md. App. 696, 721 (2001) (explaining that there is "no distinction made between the predicate for an automobile search and the predicate for a lawful arrest. Although the closely related predicates may sometimes differ slightly in terms of qualitative content or substance, they do not differ quantitatively in terms of degree of their probability."). As such, probable cause may exist to search a vehicle under the automobile exception but not to arrest a person—and therefore trigger the search incident to arrest exception—and vice versa.

"When determining whether probable cause exists for purposes of the automobile exception, courts ask whether 'there is probable cause to believe the vehicle contains contraband or evidence of a crime.'" *Pacheco*, 465 Md. at 325 (quoting *Johnson*, 458 Md. at 533). When determining whether the police had probable cause to arrest and conduct a search incident to the arrest, courts look to the likelihood of the guilt of the arrestee and

15

whether probable cause existed to believe that a felony was committed or a felony or misdemeanor was being committed in the presence of law enforcement. *Id.* "The distinction between the two exceptions is at least in part due to the diminished expectation of privacy that justifies the automobile exception . . . as compared to the unique, significantly heightened constitutional protections afforded a person to be secure in his or her body." *Id.* at 325–26 (internal citations and quotations omitted).

In *Pacheco*, we upheld the search of the vehicle under the automobile exception. This Court previously held in *Robinson* that the odor of marijuana provides police officers with probable cause to search a vehicle because marijuana in any quantity remains contraband. Given that jurisprudence, Mr. Pacheco did not contest the vehicle search based on the odor of marijuana and presence of a marijuana cigarette in the vehicle. *Id.* at 330.

Relevant to the case at bar, we further held in *Pacheco* that the police did *not* have probable cause to arrest Mr. Pacheco and search his person. *Id.* "For such a search to have been reasonable under the Fourth Amendment, the officers must have possessed, *before* the search, probable cause to believe that Mr. Pacheco was committing a felony or a misdemeanor in their presence." *Id.* We determined that neither the odor of marijuana nor the presence of a marijuana cigarette in the vehicle indicated to the police officers that Mr. Pacheco possessed a criminal amount of marijuana. *Id.* at 332–33. The totality of the circumstances leading up to Mr. Pacheco's arrest did not create probable cause to believe "he was committing, had committed, or was about to commit a crime." *Id.* at 333. It followed that the State did not meet its burden of showing "why this minimal amount of

marijuana [in the marijuana cigarette], which is not a misdemeanor, but rather a civil offense, gave rise to a fair probability that Mr. Pacheco possessed a criminal amount of marijuana on his person." *Id.*

*Pacheco* guides us in deciding that police officers must have probable cause to believe a person possesses a *criminal amount* of marijuana in order to arrest that person and conduct a search incident thereto. Although marijuana in any quantity is considered contraband, *Robinson*, 451 Md. at 99, the search incident to arrest exception can be invoked only upon the occurrence of a felony or attempt of a felony or misdemeanor; a civil infraction is neither a felony nor a misdemeanor. The odor of marijuana alone is not indicative of the quantity (if any) of marijuana in someone's possession, a fact to which Officer Burch testified.

It is certainly understandable that the Court of Special Appeals considered and followed, in the present case, the reasoning and holding of this Court in *Robinson*, as *Pacheco* had not yet been decided. Equally understandable is Judge Arthur's concern about the risks that attend the Court of Special Appeals' holding in the present case. Judge Arthur addressed those risks in his concurring opinion:

> [I]f the mere odor of burnt marijuana on a citizen's breath gives the police probable cause to make an arrest, it would seem to follow that the odor of marijuana smoke on a person's clothes or hair would give probable cause as well. If so, it is not difficult to imagine scenarios in which police officers would have probable cause to arrest and search someone whose only exposure to marijuana is from second-hand smoke—e.g., someone who was standing inside a bus enclosure in the rain while others smoked marijuana; someone whose family members or housemates smoke marijuana; someone who borrowed a piece of clothing or outerwear from an acquaintance who smokes marijuana; someone who just came from a concert at which members

17

of the audience were smoking marijuana; etc. In fact, the officers would have probable cause to arrest and search someone who got off a bus or subway train in Maryland after smoking marijuana in the District of Columbia, where the private use and possession of up to two ounces has been *legalized* (and not merely decriminalized). D.C. Stat. Ann. § 48–904.01(a)(1) (West 2018). I would have thought that the reform of Maryland's marijuana laws was intended to reduce rather than facilitate intrusive searches in circumstances such as these.

*Lewis*, 237 Md. App. at 691 (Arthur, J., concurring). Judge Nazarian expressed similar concerns in his dissenting opinion. *Id.* at 703 (Nazarian, J., dissenting) (cautioning that "[t]here is no way to challenge or verify what the officer smelled, no way to test whether a person actually smelled of marijuana, . . . and no way to control for the fully legal and otherwise non-criminal or second-hand ways someone could come to smell like marijuana.").[7]

Robinson *and Possession of Contraband*

The State seizes on *Robinson* to argue that, because marijuana remains contraband and police officers cannot estimate whether a person possesses a criminal quantity of marijuana based on odor, the odor of marijuana creates probable cause to arrest someone in public without a warrant. In *Robinson*, we held that the odor of marijuana emanating

---

[7] In our sister state of New York, trial judges have been similarly critical about whether the mere odor of marijuana may provide probable cause for law enforcement officers to seize an individual. *See e.g., People v. Suncar*, 116 N.Y.S.3d 872, 882 (N.Y. Sup. Ct. 2019) ("If possession of marijuana in small quantities is no longer a crime then the mere odor of unburnt marihuana could not provide probable cause for the arrest of the occupants of a vehicle that has not committed a moving violation."); *People v. Brukner*, 25 N.Y.S.3d 559, 571 (N.Y. City Ct. 2015), *aff'd, appeal dismissed*, 43 N.Y.S.3d 851 (N.Y. Co. Ct. 2016) ("An odor of stale or burnt marihuana on clothing, without more, is equally susceptible to the innocent non-criminal explanation that the Defendant smoked marihuana previously in private, and not in public.").

from an automobile gives rise to probable cause to search that automobile. 451 Md. at 99.

We explained that:

> [P]ossession of ten grams or more of marijuana, crimes involving the distribution of marijuana, and driving under the influence of a controlled dangerous substance have not been decriminalized in Maryland, and, thus, the odor of marijuana emanating from a vehicle provides probable cause to believe that the vehicle contains evidence of a crime, and a law enforcement officer may search the vehicle under such circumstances.

*Id.* at 134.

*Robinson*—indeed, the *Carroll* doctrine altogether—is inapplicable outside of the vehicle search context. *See Lewis*, 237 Md. App. at 695 (Nazarian, J., dissenting) (explaining that "the broad probable cause language in *Robinson* arose in the context of vehicle searches, and flows from the vehicle search doctrine that doesn't apply identically to individuals."); *see also Norman v. State*, 452 Md. 373, 411 (noting "the only issue in *Robinson* was whether an odor of marijuana emanating from a vehicle provides probable cause to search the vehicle. No frisks or searches of persons were at issue in *Robinson*").[8] As explained above, one of the justifications for the automobile exception is the diminished expectation of privacy one enjoys in his or her vehicle. In juxtaposition, there is a

---

[8] In *Norman*, we analyzed the impact of decriminalization on a law enforcement officer's authority to frisk vehicle occupants upon detecting the odor of marijuana emanating from the vehicle. 452 Md. at 378. We held that a law enforcement officer has reasonable suspicion to frisk one of multiple occupants of a vehicle when that vehicle is emanating an odor of marijuana *and* the totality of the circumstances indicates that the occupant in question is armed and dangerous. *Id.* at 379. We cautioned, though, that the "odor of marijuana alone emanating from a vehicle with multiple occupants does not give rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and subject to frisk." *Id.* at 412.

heightened expectation of privacy enjoyed in one's person. Arresting and searching a person, without a warrant and based exclusively on the odor of marijuana on that person's body or breath, is unreasonable and does violence to the fundamental privacy expectation in one's body; the same concerns do not attend the search of a vehicle. *See Pacheco*, 465 Md. at 326 (remarking that probable cause "to believe that a person is carrying evidence does not justify a warrantless search of a person . . . . Only places or things enjoying a lesser expectation of privacy . . . are vulnerable to probable-cause-based warrantless searches for the purpose of discovering and seizing evidence of a crime.") (quoting *Funkhouser*, 140 Md. App. at 724).

The State asserts that by requiring more than the odor of marijuana for probable cause to arrest, but not for probable cause to search a vehicle, we would be creating a "probable cause plus" rule for the search incident to arrest exception. Not so.

There is no denying that both the automobile exception and the search incident to arrest exception must satisfy the probable cause standard. The Court has made clear, though, that

> [t]he same facts and circumstances that justify a search of an automobile do not necessarily justify an arrest and search incident thereto. This is based on the heightened expectation of privacy one enjoys in his or her person as compared to the diminished expectation of privacy one has in an automobile. The arrest and search of Mr. Pacheco was unreasonable because nothing in the record suggests that possession of a joint and the odor of burnt marijuana gave the police probable cause to believe he was in possession of a criminal amount of that substance.

*Pacheco*, 465 Md. at 333–34.

20

The same holds true in the present case. The search of Petitioner and the red bag strapped across his chest was based solely on the odor of marijuana emanating from his person. Under *Pacheco*, that information fell short of supplying the requisite probable cause to conduct that search. *Id.*

For such a search to be supported by probable cause, the police must possess information indicating possession of a criminal amount of marijuana. There is no indication in the record suggesting that Petitioner was in possession of that amount of marijuana; all the record does reflect is that Petitioner smelled of marijuana. Consistent with our decision in *Pacheco*, we hold here that the mere odor of marijuana emanating from a person, without more, does not provide the police with probable cause to support an arrest and a full-scale search of the arrestee incident thereto.

## IV.

### Conclusion

The Fourth Amendment's protection against unreasonable searches and seizures prohibits law enforcement officers from arresting and searching a person without a warrant based solely upon the odor of marijuana on or about that person. Probable cause to conduct a lawful arrest requires that the arrestee committed a felony or was committing a felony or misdemeanor in a law enforcement officer's presence. Possession of less than ten grams of marijuana is a civil offense, not a felony or a misdemeanor, therefore law enforcement officers need probable cause to believe the arrestee is in possession of a criminal amount

21

of marijuana to conduct a lawful arrest.  The odor of marijuana alone does not indicate the

quantity, if any, of marijuana in someone's possession.

                                       **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.  CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT COURT WITH INSTRUCTIONS TO GRANT THE MOTION TO SUPPRESS.  COSTS TO BE PAID BY THE STATE.**