*In re D.D.*, No. 2616, September Term, 2019, Opinion by Graeff, J.

**FOURTH AMENDMENT – SEARCHES AND SEIZURES – INVESTIGATORY DETENTIONS – REASONABLE SUSPICION**

The odor of marijuana, by itself, does not provide reasonable suspicion of criminal activity, and therefore, a stop based on this circumstance alone is unreasonable under the Fourth Amendment.

Circuit Court for Prince George's County
Case No. JA-19-0409

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2616

September Term, 2019

_____

IN RE: D.D.

_____

Graeff,
Kehoe,
Zic,

JJ.

_____

Opinion by Graeff, J.

_____

Filed: April 28, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

D.D., appellant, was charged in the Circuit Court for Prince George's County with three counts: possession of a regulated firearm by a person under 21 years of age; wear, carry, and transport a handgun upon his person; and wear, carry, and transport a loaded handgun upon his person.[1]  Appellant filed a motion to suppress the handgun the police recovered from his person, asserting that the police lacked reasonable articulable suspicion to stop and frisk him.  The circuit court, sitting as a juvenile court, denied appellant's motion.  On January 7, 2020, the court found appellant involved on all counts, and it placed appellant on probation for nine months.

Appellant argues on appeal that the circuit court erred in denying his motion to suppress, asserting that the police lacked the requisite reasonable suspicion to stop or frisk him.  The argument regarding the stop raises an issue of first impression, i.e., whether the odor of marijuana provides reasonable suspicion to authorize a police officer to conduct an investigatory stop.  We hold that the odor of marijuana, by itself, does not provide reasonable suspicion of criminal activity, and therefore, a stop based on this circumstance alone is unreasonable under the Fourth Amendment.  Accordingly, we shall reverse the judgment of the circuit court.

---

[1] At the time of appellant's arrest, he was 15 years old.  Because he is a juvenile, we will refer to him by his initials.

On November 15, 2019, at 7:42 p.m., Jeffery Walden and Alexandra Moser, members of the Prince George's County Police Department, responded to a call for service at an apartment complex in Capitol Heights. Officer Walden testified that the call for service involved "males in the basement" who were "playing music and smoking CDS," i.e., controlled dangerous substances. When the officers arrived at the building, Officer Walden opened the front door. He observed "a group of males walking up the steps" and "smelled a strong odor of marijuana." Officer Walden told the group, which included appellant and four other males, to "have a seat on the stairs." He testified that he gave that instruction "because of the nature of the complaint" and because he and Officer Moser were outnumbered. There were two sets of stairs in the building, and four members of the group sat down on the stairs to the left, and appellant sat on the stairs to the right.

Officer Walden then asked the group who, if anyone, lived in the building. The response was evasive, with group members "snickering, laughing, very carefree, [and] not cooperative." No member of the group stated that they lived in the building. Appellant "shrugged his shoulders and didn't say anything," and his body language was "evasive." When specifically asked where he lived, appellant responded "my dick."

Officer Walden testified that he was in fear that one of the individuals was armed. This fear was based on "evasive body language" and that there were "five of them in baggy

---

[2] Because the sole issue on appeal involves the motion to suppress, we will address the facts only as they pertain to that issue.

clothes." He stated that, "for our safety to be able to continue with the investigation, that I wanted to feel safe that there was nobody that was armed at the time." When asked what crime Officer Walden was investigating, he stated: "Trespassing and the possession of CDS."

Officer Moser conducted a frisk of one of the other individuals, and she recovered in the person's waistband a weapon, which later was determined to be a BB gun. That person was placed in handcuffs, and Officer Walden then ordered appellant to "place his hands on top of his head" and "step against the wall." Officer Walden conducted a pat down of appellant's waistband and felt the butt of a handgun. Officer Walden then placed appellant in handcuffs and recovered a "9 millimeter handgun" with "a magazine inside it and with rounds . . . inside the magazine." Officer Walden could not recall what he did with the handgun after recovering it from appellant's waistband.

The State then asked Officer Walden how officers are "trained to respond when they're outnumbered." Officer Walden testified as follows:

> At first you're in a terrible disadvantage. We were taught in the academy, it's basic, you'd want to also go with back-up and you shouldn't handle any call by yourself.
>
> But there are times where you're put in that position to where there are several people coming at you, so you have to get the advantage. And one of the first concerns is a weapon that they could use against you.
>
> And my first concern was one of them having a weapon. And there was five of them and they were right by a door where they could run out the door, plus the odor of CDS, the odor of marijuana, that there was illegal drug activity there, the fact that nobody could provide any identification that they live inside that building.

3

So the first thing we want to do is secure them and make sure that they don't have any weapons on them. Once we found the weapon on them, then they were secured and handcuffed.

On cross-examination, Officer Walden agreed that more than 30 minutes had elapsed between the call for service at 7:10 p.m. and the officers' arrival at the building at 7:42 p.m., and the officers did not enter the building until 7:50 p.m. Officer Walden also indicated that he could not distinguish between the smell of hemp and the smell of marijuana, stating that he believed marijuana and hemp were the same.

D.A., one of the five individuals detained on November 15, 2019, testified on appellant's behalf.[3] He and his friends "were just chilling, listening to music and stuff" in the building's laundry room, and when they were ready to leave, one of the group members "spotted a police officer." The group waited several minutes to leave the laundry room, but while they were coming up the stairs, they encountered Officers Moser and Walden. The officers immediately told them to sit down and asked: "[W]here's the dope?"

The individuals told the officers that there were no drugs, and the officers then told them that they were all going to be searched. Officer Moser searched "Juan," one of the group members, who informed Officer Moser that he had a BB gun on his person. Officer Moser put the BB gun in her pocket, handcuffed Juan, and "sat him down."

Officer Walden then searched appellant "at least twice." The first time he was patting him down, and the second time he "started excessively searching him" and "going

---

[3] Because he is a juvenile, we refer to D.A. by his initials throughout this opinion.

4

like more into like his pants and stuff." Officer Walden found a weapon and handcuffed appellant.

On cross-examination, D.A. testified that the group had been in the laundry room for more than 30 minutes. He admitted that they did not live in the building, and they had been smoking marijuana, but he did not believe they had a strong odor of marijuana on them.

In closing, appellant's counsel argued that the handgun recovered from appellant's waistband should be suppressed because the police did not have reasonable articulable suspicion to support the initial stop. Counsel asserted that the police lacked reasonable suspicion "that a crime was afoot," stating that the officers had "no idea" whether the group of people they saw were "involved in anything related to that particular call" more than 30 minutes earlier.

Counsel further noted that, although Officer Walden testified that he smelled marijuana, he admitted that he could not differentiate the smell of marijuana from the smell of hemp, which was legal.[4] Counsel analogized this case to *Bailey v. State*, 412 Md. 349, 359–60, 382 (2010), where the Court of Appeals held that the smell of ether, a lawful substance associated with PCP, did not provide probable cause for an arrest. Counsel

---

[4] Counsel stated that "hemp is a subset of marijuana and . . . is legalized." He relied on legislation, effective June 1, 2019, that (1) established a framework for the legal commercial production of hemp, the plant Cannabis sativa L. with a THC concentration not exceeding 0.3%, Md. Code Ann., Agriculture §§ 14-101–309 (2019 Supp.); and (2) provided that marijuana, which includes "all parts of any plant of the genus Cannabis," does not include hemp as defined in the Agriculture Article, Md. Code Ann., Criminal Law Article, § 5-101(r)(2)(vi) (2019 Supp.).

argued that something that "has a mix of lawful and unlawful purposes" cannot give probable cause for an arrest, and because the scent of marijuana could indicate hemp, the stop was not supported by reasonable articulable suspicion.

Counsel then turned to the frisk of appellant, arguing that the frisk was not supported by reasonable suspicion that appellant was armed and dangerous. Counsel stated that Officer Walden's testimony suggested that it was a blanket policy to frisk all detained individuals and check for weapons when the number of detained individuals outnumbered the number of officers on the scene.

The State argued that the officers had reasonable suspicion that two misdemeanors, i.e., trespass and "a marijuana issue," were being committed. No one was answering the questions regarding where the individuals lived, the officers smelled marijuana and were outnumbered, and "[o]fficer safety kicks in." The prosecutor argued that both the stop and the frisk were reasonable under the circumstances.

Appellant's counsel argued that possession of marijuana was not the type of crime that gave the officers reasonable suspicion that appellant was armed and dangerous. Rather, the frisk was conducted purely because the group outnumbered the officers, which was an insufficient basis for a frisk.

The court denied the motion to suppress, finding that the police had reasonable articulable suspicion that appellant was engaged in criminal activity. The court noted that it was 7:00 p.m. in November, it was cold, and "there was a strong odor of marijuana." It continued:

6

The Court credits the testimony of the officer regarding the response from some of the males in response to his questions, that the young man was evasive.

The Court also credits the officer's testimony given the particularized -- or the testimony was that he asked where he lived and the, they responded, replied, you know, at my dick.

So the Court finds there's a reasonable articulable suspicion for criminal activity.

The Court is going to deny the motion to suppress.

## STANDARD OF REVIEW

"Our review of a circuit court's denial of a motion to suppress evidence is 'limited to the record developed at the suppression hearing.'" *Pacheco v. State*, 465 Md. 311, 319 (2019) (quoting *Moats v. State*, 455 Md. 682, 694 (2017)). "We assess the record 'in the light most favorable to the party who prevails on the issue that the defendant raises in the motion to suppress.'" *Id.* (quoting *Norman v. State*, 452 Md. 373, 386, *cert. denied*, 138 S. Ct. 174 (2017)). We review the circuit court's factual findings under the clearly erroneous standard, and we review legal questions *de novo*, making an "independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case." *Id.* (quoting *Grant v. State*, 449 Md. 1, 15 (2016)).

## DISCUSSION

Appellant contends that the circuit court erred in denying his motion to suppress the gun on his person for two reasons. First, he argues that the initial encounter was an unreasonable investigatory stop under the Fourth Amendment. Second, he asserts that, even if the initial stop was lawful, the frisk that revealed the handgun was unlawful because

Officer Walden lacked reasonable suspicion to believe that appellant was armed and dangerous.

The State contends that several of appellant's arguments were not raised at the suppression hearing, and therefore, they are waived and not properly before this Court. In any event, the State contends that appellant's arguments are without merit because: (1) the smell of marijuana provided reasonable suspicion to stop appellant; and (2) the police had reasonable suspicion to frisk appellant.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Robinson v. State*, 451 Md. 94, 108 (2017). Appellant's first contention is that he was subjected to an unreasonable seizure.

In assessing this contention, we begin by discussing two types of encounters that are recognized as seizures in Maryland: an arrest and an investigatory stop. The police are authorized to conduct a warrantless arrest if an officer has probable cause to believe that a felony has been committed or a felony or misdemeanor is being committed in the officer's presence. *Maryland v. Pringle*, 540 U.S. 366, 369–70 (2003). An investigatory stop, on the other hand, is authorized when "the officer has reasonable suspicion, supported by articulable facts, that criminal activity 'may be afoot.'" *In re David S.*, 367 Md. 523, 532 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). *Accord Swift v. State*, 393 Md. 139, 150 (2006) ("A police officer may engage in an investigatory detention without violating the Fourth Amendment as long as the officer has a reasonable, articulable suspicion of criminal activity."); *Nathan v. State*, 370 Md. 648, 660 (2002) ("[A] police officer who has reasonable suspicion that a particular person has committed, is committing, or is about to

8

commit a crime may detain that person briefly in order to investigate the circumstances that provoked suspicion."), *cert. denied*, 537 U.S. 1194 (2003).

Here, the parties agree that, at the point when the police told appellant to sit down, he was seized. *See Swift*, 393 Md. at 150 (A seizure occurs when, "by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions."). They also agree that the seizure was an investigatory stop, which requires reasonable suspicion as opposed to probable cause. The question here is whether the police had reasonable suspicion to support the stop.

In assessing whether a police officer had reasonable suspicion, we look at "the totality of the circumstances" to determine whether the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). Reasonable suspicion requires "something more than an inchoate and unparticularized suspicion or hunch." *Sellman v. State*, 449 Md. 526, 543 (2016) (quoting *Crosby v. State*, 408 Md. 490, 507 (2009)). It requires "some minimal level of objective justification," *I.N.S. v. Delgado*, 466 U.S. 210, 217 (1984), but "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 396–97 (2014) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Although the State argued below that the police had reasonable suspicion to believe that trespassing and a marijuana offense was occurring, it has narrowed its argument on appeal. In this Court, it relies only on the scent of marijuana in arguing that the police here

9

had reasonable suspicion to investigate "the possible commission of a marijuana-related crime."

Appellant contends that "the smell of marijuana does not justify a seizure." In support, he cites to "the evolution of Maryland's case law after the decriminalization of small amounts of marijuana."

To be sure, there has been an evolution in the law regarding the effect of the odor of marijuana as it relates to permissible searches and seizures under the Fourth Amendment. Prior to 2014, the law was clear that the odor of marijuana provided probable cause to believe that criminal activity was occurring, justifying a search of a car or an arrest of a person. *See State v. Harding*, 166 Md. App. 230, 240 (2005) ("[T]he odor of marijuana alone can provide a police officer probable cause to search a vehicle."), *cert. denied*, 393 Md. 161 (2006); *Ford v. State*, 37 Md. App. 373, 379–80 (arrest of driver based on smell of marijuana emanating from his person and the car was supported by probable cause), *cert. denied*, 281 Md. 737 (1977).

In 2014, however, the Maryland General Assembly decriminalized possession of less than 10 grams of marijuana. *See Lewis v. State*, 470 Md. 1, 9 (2020); Md. Code Ann., Criminal Law Article ("CR") § 5-601(c)(2) (2014 Supp.). As the Court of Appeals explained, "[t]he legislature made such possession a 'civil offense,'" subject to a citation. *Pacheco*, 465 Md. at 320 (quoting *Robinson*, 451 Md. at 97, 115).

Since the enactment of that legislation, the appellate courts have grappled with its effect on searches and seizures based on the odor of marijuana. *See, e.g.*, *Bowling v. State*, 227 Md. App. 460, 476 (Drug dog's alert to odor of marijuana, without more, provides

10

probable cause to search a vehicle because possession of marijuana is still illegal, and therefore, there is probable cause to believe there is contraband in the vehicle.), *cert. denied*, 448 Md. 724 (2016); *Robinson*, 451 Md. at 99 (When a law enforcement officer smells the odor of marijuana emanating from a vehicle, there is probable cause to believe that the vehicle contains contraband or evidence of a crime.); *Norman*, 452 Md. at 411–12 (The odor of marijuana emanating from a vehicle does not allow a frisk of all occupants because it does not, by itself, provide reasonable suspicion that they are armed and dangerous.); *Pacheco*, 465 Md. at 333–34 (Police may not arrest an occupant of a vehicle and search incident to arrest based merely on the possession of a joint and the smell of burnt marijuana.); *Lewis*, 470 Md. at 27 (The mere odor of marijuana emanating from a person does not provide probable cause to arrest and search incident to arrest; there must be probable cause to believe that the arrestee is in possession of a criminal amount of marijuana.).

Appellant contends that, pursuant to *Lewis*, the odor of marijuana does not provide reasonable suspicion to justify an investigative stop. Although the Court in *Lewis* addressed probable cause as opposed to reasonable suspicion, he asserts that the analysis in *Lewis*, as well as decisions from courts in other jurisdictions, leads to that conclusion. He also argues that there was not reasonable suspicion to support the stop because, even if the smell of marijuana can support a stop, there was no evidence that tied the smell to him.

Before addressing appellant's claim on the merits, we address the State's argument that it is not preserved for appellate review. The State argues that neither of appellant's two arguments regarding the stop were raised below, and pursuant to Md. Rule 4-252 and

11

*Savoy v. State*, 218 Md. App. 130, 141–42 (2014), a criminal defendant may not raise on appeal a new theory of suppression that was not argued in the circuit court.

Md. Rule 4-252 provides, in pertinent part, as follows:

(a) Mandatory Motions. In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

\*     \*     \*

(3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

\*     \*     \*

(e) Content. A motion filed pursuant to this Rule shall be in writing unless the court otherwise directs, shall state the grounds upon which it is made, and shall set forth the relief sought. A motion alleging an illegal source of information as the basis for probable cause must be supported by precise and specific factual averments. Every motion shall contain or be accompanied by a statement of points and citation of authorities.

In *Savoy*, 218 Md. App. at 139–40, the defendant argued that the statements he made to the police should have been suppressed because they were involuntary due to police coercion. On appeal, Savoy abandoned that argument and instead argued that the statements were inadmissible because they were taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.* at 140. Because the *Miranda* argument was not raised below in support of suppression of his statements, this Court held that Savoy's appellate argument was affirmatively waived. *Id.* at 143.

Here, appellant argued below that the police did not have reasonable suspicion to justify the initial investigatory stop. He raises the same issue on appeal, although the specific argument has shifted. At the suppression hearing, appellant argued that the odor

12

of marijuana that Officer Walden testified he smelled did not establish reasonable suspicion because Officer Walden could not distinguish between the odor of marijuana and hemp, which is legal. On appeal, however, he argues that the odor of marijuana does not provide reasonable suspicion because that odor does not indicate possession of a criminal amount of marijuana.

Although it is clear that appellant's argument that the stop was not supported by reasonable suspicion has shifted on appeal, the gist of the argument is the same, i.e., that when an officer smells the odor of what the officer believes is marijuana, that odor does not provide reasonable suspicion to support a stop because that odor, by itself, does not indicate criminal behavior, as opposed to noncriminal behavior. Accordingly, we conclude that this issue is preserved for review. *See Smith v. State*, 176 Md. App. 64, 70 n.3 (2007) ("Preservation for appellate review relates to the issue advanced by a party, not to every legal argument supporting a party's position on such issue.").

We reach a different conclusion, however, with respect to the second argument he raises on appeal in support of the contention that the stop was improper. This second argument, that "even if the smell of marijuana can support a stop, no evidence tied the smell to D.D.," was not argued below, and therefore, that contention is not preserved for review. *See Ray v. State*, 435 Md. 1, 19 (2013) (When defendant raises one theory below in support of suppression pursuant to Maryland Rule 4-252, but raises a different theory on appeal, the defendant has "waived the right to have that claim litigated on direct appeal."). Accordingly, we will not address it.

13

We thus turn to the merits of the issue preserved for review, whether the detection of the odor of marijuana, by itself, provides reasonable suspicion of criminal activity. Appellant acknowledges that there is no reported decision addressing this issue, but as indicated, he argues that the analysis in *Lewis*, 470 Md. at 27, mandates a conclusion that the smell of marijuana, by itself, does not give the police reasonable suspicion to conduct an investigatory stop.

The State disagrees. It argues that, although the Court of Appeals held in *Lewis* that the scent of marijuana does not provide probable cause to arrest, it does provide reasonable suspicion "to justify the lesser intrusion of a brief, non-physical investigatory detention."

Before discussing *Lewis*, we will discuss two prior cases addressing the impact of the 2014 legislation, which decriminalized possession of less than 10 grams of marijuana, on searches and seizures. In the first case, *Robinson*, 451 Md. at 108–113, the Court addressed the reasonableness of a search of a vehicle after the police smelled the strong odor of marijuana emanating from the vehicle. The Court noted that, subject to certain exceptions, a search without a warrant is unreasonable. *Id.* at 108–09. One exception is the automobile exception, which allows the police "to search a vehicle when he or she believes that contraband or evidence of a crime may be found in the vehicle." *Id.* at 112. The Court held that the decriminalization of possession of a small amount of marijuana was "not the same as legalization," and "possession of marijuana in any amount remain[ed] illegal in Maryland." *Id.* at 125. Accordingly, it held that marijuana in any amount remained contraband, i.e., "goods that are illegal to possess," and therefore, the odor of marijuana constitutes probable cause to search a vehicle. *Id.* at 128, 131. The Court further

14

held that the odor of marijuana provides probable cause to believe that a vehicle contains evidence of a crime, noting that:

> The odor of marijuana emanating from a vehicle may be just as indicative of crimes such as the possession of more than ten grams of marijuana, possession of marijuana with the intent to distribute, or the operation of a vehicle under the influence of a controlled dangerous substance, as it is of possession of less than ten grams of marijuana.

*Id.* at 133–34.

In the second case leading up to *Lewis*, *Pacheco*, 465 Md. at 318, two police officers approached a "suspicious vehicle" and smelled the odor of marijuana. They also observed a marijuana cigarette, which the officers knew contained less than 10 grams, in the vehicle's center console. *Id.* Based on *Robinson*, the Court upheld the search of the vehicle. *Id.* at 330. It held, however, that these facts did not give the police probable cause to arrest Mr. Pacheco, noting that "[t]he same facts and circumstances that justify a search of an automobile do not necessarily justify an arrest and search incident thereto." *Id.* at 333. The Court noted that a search pursuant to the automobile exception was justified, in part, due to the diminished expectation of privacy a person has in a vehicle, whereas a person has a "heightened expectation of privacy" in his or her person. *Id.* The Court held that the arrest of Mr. Pacheco was unreasonable because there was no evidence "that possession of a joint and the odor of burnt marijuana gave the police probable cause to believe he was in possession of a criminal amount of that substance." *Id.* at 333–34.

In *Lewis*, the police encountered a suspect in a convenience store and smelled the odor of marijuana emanating from his person. 470 Md. at 11. They arrested Mr. Lewis, and in a search incident to arrest, the police found a gun and a small amount of marijuana.

15

*Id.* at 11–12.  The Court of Appeals determined that Mr. Lewis was entitled to suppression of the items seized from his person because the smell of marijuana did not suggest that Mr. Lewis was in possession of a criminal amount of marijuana.  *Id.* at 27.  The Court held that "the mere odor of marijuana emanating from a person, without more, does not provide the police with probable cause to support an arrest and a full-scale search of the arrestee incident thereto."  *Id.* at 17, 27.  The Court explained:

> Probable cause to conduct a lawful arrest requires that the arrestee committed a felony or was committing a felony or misdemeanor in a law enforcement officer's presence. Possession of less than ten grams of marijuana is a civil offense, not a felony or a misdemeanor, therefore law enforcement officers need probable cause to believe the arrestee is in possession of a criminal amount of marijuana to conduct a lawful arrest. The odor of marijuana alone does not indicate the quantity, if any, of marijuana in someone's possession.

*Id.* at 27.

As the State notes, *Lewis* addressed probable cause, a higher standard than reasonable suspicion.  The analysis set forth in *Lewis*, however, leads to the conclusion that the odor of marijuana, by itself, does not provide reasonable suspicion to support an investigatory stop.  Although reasonable suspicion is a lower standard than probable cause, it still is tied to suspicion of *criminal* conduct.  *See Navarette*, 572 U.S. at 396 (A brief seizure is permitted "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'") (quoting *Cortez*, 449 U.S. at 417–18).  Because possession of less than 10 grams of marijuana is no longer a crime, the suspicion required to support a stop for the crime of possession of marijuana, therefore, is that the person is in possession of more than 10 grams of marijuana.  And because the "odor of marijuana alone does not indicate the quantity, if any, of marijuana in

16

someone's possession," *Lewis*, 470 Md. at 27, it cannot, by itself, provide reasonable suspicion that the person is in possession of a criminal amount of marijuana or otherwise involved in criminal activity.

Other courts have reached this same conclusion. *See, e.g.*, *State v. Francisco Perez*, 239 A.3d 975, 985–86 (N.H. 2020) (After decriminalization of small amounts of marijuana, the odor of marijuana remains a relevant factor in assessing reasonable suspicion, but it does not alone provide reasonable suspicion of criminal activity.); *Commonwealth v. Cruz*, 945 N.E.2d 899, 908 (Mass. 2011) (After the decriminalization of one ounce or less of marijuana, the odor of marijuana alone does not provide reasonable suspicion of criminal activity.).

The odor of marijuana may, with other circumstances, provide reasonable suspicion that a person is involved in criminal activity. Based on the reasoning of *Lewis* and other cases, however, because an officer cannot tell by the smell of marijuana alone that a person is involved in criminal activity, we hold that the odor of marijuana, by itself, does not provide reasonable suspicion to conduct an investigatory stop. Accordingly, Officer Walden did not have reasonable suspicion of criminality to support the stop, and it was unreasonable under the Fourth Amendment. The circuit court erred in denying the motion to suppress.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

17